OPINION OF THE COURT
GARTH, Circuit Judge.
Petitioner, Omar Abd Gomaa Orabi, appeals from an order of removability, entered by the Honorable Walter Durling, U.S. Immigration Judge (“IJ”), on May 22, 2012, and approved by the Board of Immigration Appeals (“BIA”) on September 18, 2012.
We have jurisdiction pursuant to 8 U.S.C. § 1252(a). For the reasons that follow, we will reverse the decision of the IJ and BIA.
I
Orabi, an Egyptian citizen, was admitted to the United States in 1990 and became a lawful permanent resident without conditions in 1996. In 2010, he was convicted in the U.S. District Court for the Southern District of New York (“S.D.N.Y.”) for the offenses of Conspiracy to Commit Fraud in connection with Access Devices, Possession of Counterfeit Access Devices, Possession of Counterfeit and Forged Checks, and Aggravated Identity theft. He was sentenced to a term of imprisonment of 70 months. In November 2011, the District Court amended its judgment and recalculated Orabi’s sentence; however, Orabi was still sentenced to a term of 70 months. He appealed that order to the Second Circuit in December 2011, and that appeal remains pending. See United States v. Ibrahim, (Orabi), C.A. No. 12-0044 (2d Cir., filed Dec. 29, 2011).
In February 2012, the Department of Homeland Security (“DHS”) initiated removal proceedings against Orabi. Among other things, DHS charged that Orabi was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because his S.D.N.Y. conviction was for an aggravated felony. See 8 U.S.C. § 1101(a)(43)(R). Orabi notified DHS and the Immigration Court that he was appealing the S.D.N.Y. conviction, and DHS moved to withdraw the aggravated felony removal charge. At a subsequent removal hearing, Orabi appeared pro se and took part in an ambiguous exchange with the IJ regarding the status of the Second Circuit appeal. At the IJ’s request, Orabi also agreed to provide a letter that ostensibly withdrew his Second Circuit appeal. DHS therefore moved to reinstate the removal charge, and the IJ sustained it.
The appellate record of the Second Circuit reveals neither the letter, which ostensibly withdrew Orabi’s appeal, nor any motion by Orabi to withdraw the appeal.[1] Indeed, after a thorough examination of the docket sheet of the Second Circuit, it appears that Orabi’s appeal from his S.D.N.Y. conviction is still awaiting disposition by the Second Circuit.
We make reference to the record of the Second Circuit because it is that record that is controlling regarding the *538 documents received and matters affecting the appeal of a litigant. Moreover, absent any proof of actions, documents, affidavits, or similar submissions that might contradict the record, it is the record that governs. See, e.g., U.S. v. Simpson, 94 F.3d 1373, 1381 (10th Cir.1996) (“We believe that a certified docket sheet is adequate, absent some contradictory evidence by the defendant, to establish the existence of a prior conviction for this sentencing purpose” (citing United States v. Dickens, 879 F.2d 410 (8th Cir.1989))); Brainerd v. Beal, 498 F.2d 901 (7th Cir.1974) (“[T]he district court’s docket cannot be impeached by affidavit” (citing Wall v. United States, 97 F.2d 672 (10th Cir.1938), cert. denied, 305 U.S. 632, 59 S.Ct. 104, 83 L.Ed. 405 (1938))). Here, as we have indicated, the record is devoid of any such submissions by Orabi. Hence, we regard Orabi’s appeal of his criminal conviction as still extant and therefore viable. We credit Orabi’s appeal to the BIA, where he .has argued that his Second Circuit appeal has never been withdrawn.
While Orabi argued on appeal to the BIA that his convictions were not final for immigration removal and that the IJ’s removal order was void, the BIA nevertheless held that his conviction remained final for immigration purposes. The BIA stated:
[UJnder section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A), the térm “conviction” means “a formal judgment of guilt of the alien entered by a court.” Whether such judgment may be subject to direct appeal is immaterial to the attachment of immigration consequences: See, e.g., Planes v. Holder, 686 F.3d 1033 (9th Cir.2012)[2].... The Immigration Judge therefore properly considered the immigration consequences of [Orabi’s] conviction.
Accordingly, the BIA dismissed Orabi’s appeal.[3]
On August 12, 2013, the Government filed a letter brief stating that: (1) Orabi had been deported to Egypt; (2) despite Orabi’s deportation, we retained jurisdiction; and (3) the Government was prepared to return Orabi to the United States pursuant to Immigration Control Enforcement (“ICE”) regulations. See ICE Policy, § 11061.1(2) (“Absent extraordinary circumstances, if an alien who prevails before the U.S. Supreme Court or a U.S. [C]ourt of [A]ppeals was removed while his or her [petition for review] was pending, ICE will facilitate the alien’s return to the United States if either the court’s decision restores the alien to lawful permanent resident (LPR) status, or the alien’s presence is necessary for continued administrative removal proceedings.”); see also 8 U.S.C. § 1229a(b)(2)(A) (requiring an immigrant’s presence at a removal hearing absent the parties’ consent or a telephonic or video conference).
Orabi now petitions pro se before us for review. Whether we have jurisdiction is *539 the crux of his appeal from the BIA. The answer to this question depends on whether the S.D.N.Y. conviction, which is on appeal to the Second Circuit, was a final judgment for immigration purposes.
II
Although 8 U.S.C. § 1252(a)(2)(C) provides that “no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [certain] criminal offense[s],” 8 U.S.C. § 1252(a)(2)(D) grants us jurisdiction to review “constitutional claims or questions of law raised upon a petition for review” of final removal orders. Paredes v. Att’y Gen., 528 F.3d 196, 198 (3d Cir.2008); Papageorgiou v. Gonzales, 413 F.3d 356, 357-58 (3d Cir.2005). We review questions of law de novo, Caroleo v. Gonzales, 476 F.3d 158, 162 (3d Cir.2007), but we “will not disturb the IJ’s credibility determination and findings of fact if they are supported by reasonable, substantial and probative evidence on the record considered as a whole.” Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir.2003) (internal quotation marks omitted). Whether Orabi’s conviction was final for immigration purposes despite the pendency of his appeal to the Second Circuit is a question of law subject to plenary review. See Henry v. Bureau of Immig. & Customs Enforcement, 493 F.3d 303, 306 (3d Cir.2007).
III
The Government offers three arguments in support of its position that Orabi’s conviction was final for immigration purposes: (1) the record supports the Agency’s finding that Orabi withdrew his appeal to the Second Circuit; (2) Orabi’s conviction was final regardless of whether his appeal was withdrawn because his appeal only challenged his sentence and not the finding of his guilt; and (3) this Court should adopt the position of its sister Circuits and the BIA that a conviction is final for immigration purposes regardless of whether a direct appeal is pending.
A
We have already discussed supra why the Government’s position as to the withdrawal of Orabi’s appeal cannot prevail. Based on.the Second Circuit record, Orabi had — and has — a pending appeal before that Court. See Fiadjoe v. Att’y Gen., 411 F.3d 135, 153 (3d Cir.2005). Additionally, the BIA did not' base its decision on its finding that Orabi did not have a pending appeal, but rather on its determination that a conviction is final for immigration purposes regardless of whether a direct appeal is pending. See AR 3 (citing Planes v. Holder, 686 F.3d 1033, 1034 (9th Cir.2012) (Ikuta, J., concurring in denial of rehearing en banc)).
B
The Government’s argument regarding the sentenee/conviction distinction and the contents of Orabi’s Second Circuit appeal is similarly unavailing. Because the BIA did not reach its decision based on this ground, we may not affirm the judgment on this ground. See Sec. & Exch. Comm’n v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) (“[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.”); Li v. Att’y Gen., 400 F.3d 157, 163 (3d Cir.2005) (noting that a court cannot affirm an agency decision on a ground upon which the agency did not rely).
*540 C
Thus, we turn to the Government’s concluding argument concerning the finality for immigration purposes of the Second Circuit appeal from Orabi’s criminal judgment of conviction.
Prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (“IIRIRA”), it was “well established that a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived.” In re Ozkok, 19 I. & N. Dec. 546, 552 n. 7 (BIA 1988) (citing Marino v. INS, 537 F.2d 686 (2d Cir.1976); Aguilera-Enriquez v. INS, 516 F.2d 565 (6th Cir.1975); Will v. INS, 447 F.2d 529 (7th Cir.1971)); see also Planes, 686 F.3d at 1037 (Reinhardt, J., dissenting from the denial of rehearing en banc) (citing “the longstanding rule that a conviction is not final for immigration purposes until the immigrant has exhausted or waived his direct appeal as of right”).
The IIRIRA defined the term “conviction,” for purposes of immigration removal as:
a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where ... (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien’s liberty to be imposed.
8 U.S.C. § 1101(a)(48)(A).
Thus, the IIRIRA’s amendment, which focuses solely on the term “conviction,” sought to broaden the scope of that term, but in so doing, it did not refer to, amend, change, or even mention doing away with the need for appeal to acquire finality of judgment. Understandably, Section 322, as recalled in the Conference Committee Report of the House of Representatives, addressed only adjudications that were “deferred” (a product of numerous state procedures) and instances in which the subject alien has violated a term or condition of probation. See H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess.1996, 1996 WL 563320 at *496-97. In those cases, the IIRIRA amendment was designed to correct “a myriad of provisions for ameliorating the effects of a conviction” by giving effect to the “original finding or confession of guilt ... to establish a ‘conviction’ for purposes of the immigration laws.” Id.
Consequently, following IIRIRA’s passage, this Court’s precedent governing the finality requirement in immigration removal cases remained undisturbed. In Paredes v. Att’y Gen., decided twelve years later than the amendment to the IIRIRA, we understanding^ subscribed to the position that until such time as a direct appeal from a conviction that authorizes removal has been resolved, the judgment is not final for immigration removal purposes. 528 F.3d 196, 198 (3d Cir.2008). Our jurisdiction for immigration removal purposes is therefore retained.[4]
Other Courts, however, have held that a conviction is final for immigration purposes notwithstanding any pending appeals, without giving effect to the purpose of the IIRIRA. See, e.g., Planes, 686 F.3d at 1034 (Ikuta, J., concurring in the denial of rehearing en banc) (collecting cases).
We do not agree that the IIRIRA eliminated a direct appeal from the finality rule in its definition of conviction. Hence, we do not agree with those Courts that have *541 adopted this interpretation. See, e.g., id. (collecting cases). By doing so, they have vitiated, without reason, the BIA’s rule formulated and established in In re Ozkok, 19 I. & N. Dec. 546, 552 n. 7 (BIA 1988).
In Ozkok, the BIA held that “[wjhere adjudication of guilt has been withheld, ... further examination of the specific procedure used and the state authority under which the court acted will be necessary.” 19 I. & N.-Dec. at 551 (emphasis added). The BIA went on to identify three elements that established a “conviction” in such settings:
(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty; (2) the judge has ordered some form of punishment, penalty, or restraint on the person’s liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community; based sanctions such as a rehabilitation program, a work-release or. study-release program, revocation or suspension of a driver’s license, deprivation of nonessential activities or privileges, or community service); and (3) a judgment or adjudication of guilt may be entered if the, person violates the terms of his probation or fails to comply with the requirements of the court’s order, without availability of further proceedings regarding the person’s guilt or innocence of the original charge.
Id. at 551-52. That is, “for immigration purposes, a deferred adjudication [as distinct from a pending appeal] would be considered a conviction if three elements were met, the third of which consisted of a finality requirement.” Planes, 686 F.3d at 1040 (Reinhardt, J., dissenting from the denial of rehearing en banc) (emphasis added).
While Congress “adopted almost verbatim” this definition of “conviction” in the IIRIRA, id. at 1039, the statute explicitly eliminated the finality requirement for deferred adjudications. See 8 U.S.C. § 1101(a)(48)(A); see also H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess.1996, 1996 WL 563320 at *496-97. Indeed, the Congressional Conference Committee Report accompanying IIRIRA refers only to a modification of the treatment of deferred adjudications: “This new provision, by removing the third' prong of Ozkok, clarifies Congressional intent that even in cases where adjudication is ‘deferred, ’ the original finding or confession of guilt is sufficient to establish a ‘conviction’ for purposes of the immigration laws.” Id. (emphasis added), quoted in Moosa v. INS, 171 F.3d 994, 1002 (5th Cir.1999). Therefore, we agree with the Planes dissent that ' ...
Nothing in IIRIRA or its legislative history suggests that Congress intended the phrase “formal judgment of guilt” to be interpreted any differently from how it always had been interpreted prior to the enactment of the statute.... The elimination of the finality provision for deferred adjudications, along with the failure to make any change in the language regarding direct appeals as of right ... demonstrates Congress’ intent to retain the finality rule for the latter category of appeals.
686 F.3d at 1039-40 (Reinhardt, J., dissenting from the denial of rehearing en banc); see also Williams v. Taylor, 529 U.S. 420, 434, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (“When .the words of the Court are used in a later statute governing the same subject matter, it is respectful of Congress and of the Court’s own processes to give the words the same meaning in the absence of specific direction to the contrary.”).
Given that Orabi’s appeal was one of right and that no deferred adjudication is *542 at issue here, we hold that the IIRIRA’s elimination of the finality requirement in the case of deferred adjudications does not disturb the longstanding finality rule for direct appeals recognized in Ozkok and is irrelevant to the matter before us.
Further, Ozkok, which states that “a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived,” 19 I. & N. Dec. at 552 n. 7, is approvingly cited in Paredes as pertaining to a direct appeal as distinguished from a collateral appeal of a judgment, 528 F.3d at 198. Paredes, itself, involved a collateral appeal taken after the petitioner, Paredes, had suffered two state (New Jersey) convictions. Pa-redes did not appeal the state convictions but filed petitions for writs of coram nobis to challenge them. Id. We explained that a petition for a writ of coram nobis is not a direct appeal of a conviction but is rather a collateral attack on a conviction. Id. (citing United States v. Gross, 614 F.2d 365, 368 (3d Cir.1980)). As such, and because Paredes’s time to appeal directly had expired, we denied Paredes’s petition. Id. at 198-99.
Accordingly, consistent with other Circuits, we do not retain jurisdiction for immigration purposes in our Court when a collateral appeal is taken from a criminal judgment adverse to a petitioner because it is not a direct appeal. Id. (citing United States v. Garcia-Echaverria, 374 F.3d 440, 445-46 (6th Cir.2004); Grageda v. INS, 12 F.3d 919, 921 (9th Cir.1993); Okabe v. INS, 671 F.2d 863, 865 (5th Cir.1982); Aguilera-Enriquez v. INS, 516 F.2d 565, 570-71 (6th Cir.1975); Will, 447 F.2d at 533).
Here, however, unlike the collateral challenge in Paredes, the criminal appeal awaiting resolution by Orabi is a direct appeal. The IIRIRA amendment that speaks only to the term “conviction”[5] cannot change the result of our analysis and reasoning in Paredes, despite the holdings of other Courts.
Further, despite the Government’s claims to the contrary, we do not read Planes as providing a consensus as to the correct interpretation of the IIRIRA’s “finality rule.” As the Planes dissent correctly notes, “each of the cases cited by the panel is distinguishable, and only the one decided by the Tenth Circuit [United States v. Saenz-Gomez, 472 F.3d 791 (10th Cir.2007) ] purports to hold that a petitioner is not entitled to a direct appeal as of right prior to being deported.” 686 F.3d at 1039 n. 4 (Reinhardt, J., dissenting from the denial of rehearing en banc). See, e.g., Waugh v. Holder, 642 F.3d 1279, 1281-82 (10th Cir.2011) (denying petitioner’s appeal where his collateral attack was pending); Ramirez v. Holder, 447 Fed.Appx. 249 (2d Cir.2011) (recognizing the statements regarding finality in Puello v. Bureau of Citizenship & Immig. Servs., 511 F.3d 324, 331-2 (2d Cir.2007), as dicta); Abreu v. Holder, 378 Fed.Appx. 59 (2d Cir.2010) (vacating a decision by the BIA that the pendency of a late-reinstated appeal did not undermine the finality of an alien’s conviction); Saenz-Gomez, 472 F.3d at 794 (addressing the definition of “conviction” in the context of a sentencing enhancement at a criminal re-entry proceeding as opposed to a removal hearing); Montenegro v. Ashcroft, 355 F.3d 1035 (7th Cir.2004) (per curiam) (involving a collateral appeal and a petition of certiorari rather than a direct appeal); Griffiths v. INS, 243 F.3d 45, 54 (1st Cir.2001) (“The INS was careful at oral argument to say that it was not taking the position it could deport someone adjudicated guilty while their appeal or appeal period was pending.... Both the *543 statutory language and the legislative history reflect a determination that a distinct mode of treatment for deferred adjudications is appropriate in this context”); Moosa, 171 F.3d at 1001 (holding only that the finality rule had been eliminated as to deferred adjudications, not as to direct appeals).
We are therefore convinced that the principle announced and held in Ozkok — that “a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived”[6] — is “is alive and well” in this Circuit and is correctly applied to Orabi as this Circuit’s precedent.
The judgment of the BIA will therefore be reversed, with instructions that the Government, pursuant to its August 12, 2013 letter, be directed to return Orabi to the United States in accordance with the ICE regulations cited.

. We may take judicial notice of the contents of another Court’s docket. See, e.g., Mar. Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); Porter v. Ollison, 620 F.3d 952, 954-55 (9th Cir.2010); Singh v. U.S. Dep’t of Homeland Sec., 526 F.3d 72, 80 n. 9 (2d Cir.2008); see also F.R.E. 201(b). But see Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir.2004) abrogated on other grounds by Nbaye v. Attorney General, 665 F.3d 57 (3d Cir.2011).

. The citation provided by the BIA for Planes v. Holder, 686 F.3d 1033 (9th Cir.2012), is actually a citation to a concurrence in an order denying rehearing en banc by the Honorable Sandra S. Ikuta, a Ninth Circuit U.S. Court of Appeals Judge. The dissent in that order was written by the Honorable Stephen R. Reinhardt, U.S. Court of Appeals Judge. We discuss his reasoning in text infra. The citation to the initial panel decision denying Planes's petition is Planes v. Holder, 652 F.3d 991 (9th Cir.2011), authored by Judge Ikuta.

. Orabi also submitted to the BIA a copy of a Second Circuit order dated July 16, 2012 granting his motion for an extension of time in his criminal appeal. The BIA noted that the order constituted new evidence but held that the pendency of a criminal appeal was immaterial to Orabi's immigration proceedings.

. As we stated, the Government conceded in its August 12, 2013 letter brief that despite Orabi’s deportation, we retain jurisdiction.

. 8 U.S.C. § 1101(a)(48)(A).

. 19 1. &N. Dec. at 552 n. 7.