**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3595
_____

VERNON W. HILL, II,

Appellant

v.

TD BANK, NA; COMMERCE BANCORP, LLC

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 1-09-cv-03685)
District Judge: Honorable Robert B. Kugler

_____

Argued September 9, 2014

Before: RENDELL, GREENAWAY, JR. and SLOVITER, Circuit Judges

(Opinion filed: September 24, 2014)

Louis M. Barbone, Esquire
Edwin J. Jacobs, Jr., Esquire  **(Argued)**
Arthur J. Murray, Esquire
Jacobs & Barbone
1125 Pacific Avenue
Atlantic City, NJ  08401

Counsel for Appellant

Joseph G. Antinori, Esquire
Susan M. Leming, Esquire
William M. Tambussi, Esquire
Brown & Connery
360 Haddon Avenue
P. O. Box 539
Westmont, NJ   08108

Joshua S. Bolian, Esquire
Mark T. Stancil, Esquire  **(Argued)**
Robbins, Russell, Englert, Orseck, Untereiner & Sauber
1801 K. Street, N.W.
Suite 411-L
Washington, DC   20006

Counsel for Appellees

---

O P I N I O N

---

**RENDELL**, Circuit Judge:

Vernon W. Hill, II ("Hill"), the former chairman and CEO of Commerce Bancorp, Inc. (now Commerce Bancorp, LLC) ("Bancorp"), and Commerce Bank, N.A. ("Bank"),[1] has sued Bancorp and Bank for breach of an employment agreement that triggered a "golden parachute" payment when Hill was terminated.  Bancorp informed Hill that it could not make the golden parachute payment because it could not comply with the certification requirement imposed by 12 C.F.R. § 359.4(a)(4) ("Golden Parachute

---

[1]    Bancorp is the holding company; Bank is the wholly owned subsidiary.  Bank has since merged into TD Bank, N.A.

2

Regulation"). After a nine-day jury trial, the jury returned a verdict in Bancorp's favor. The District Court denied Hill's motion for a new trial.

Hill has appealed several of the District Court's orders. For the reasons set forth below, we will affirm the rulings of the District Court.

## I. Background

Because we write primarily for the benefit of the parties, we recite only the facts necessary to the disposition of this appeal. In December 2006, the Office of the Comptroller of the Currency ("OCC") and the Board of Governors of the Federal Reserve System ("FRB") notified Bancorp and Bank that the OCC and FRB each were conducting an investigation. The matters under investigation by the OCC and FRB included: "[p]otential conflicts of interest arising out of CEO/COB Vernon W. Hill [II], his relatives, for example Shirley Hill, Robert Hill, Vernon W. Hill [III] and close business associates as well as other insiders and insider related parties or entities in branch transactions." (Suppl. App. 93.) On June 28, 2007, Bank and the OCC entered into a consent order, and Bancorp terminated Hill (effective July 31, 2007). The consent order "ensure[s] that actual or apparent conflicts of interest or unsafe or unsound practices involving the construction or acquisition of branch offices do not occur in the future" (App. 170), as the OCC was concerned, *inter alia*, about Bank's relationship with Interarch, Inc., which, as Hill has explained, is an architectural and design firm that Hill's spouse founded.

3

Hill thereafter sought his severance payment. Under the Golden Parachute Regulation, in order for Hill's severance payment to be made, Bancorp or Hill must certify to the appropriate federal banking agency:

> [T]hat it does not possess and is not aware of any information, evidence, documents or other materials which would indicate that there is a reasonable basis to believe, at the time such payment is proposed to be made, that:
> (i) [Hill] has committed any fraudulent act or omission, breach of trust or fiduciary duty, or insider abuse with regard to [Bank] that has had or is likely to have a material adverse effect on [Bank]; [and]
> (ii) [Hill] is substantially responsible for . . . the troubled condition, as defined by applicable regulations of the appropriate federal banking agency, of [Bank] . . . .

12 C.F.R. § 359.4(a)(4). Once that certification is submitted to the appropriate federal banking agency, the agency must then determine whether to approve the severance payment: the agency may decide not to take Bancorp at its word, but rather investigate, *inter alia*, whether Hill committed any fraudulent act or omission, breach of trust or fiduciary duty, or insider abuse with regard to Bank. *See id.* § 359.4(b)(3). By regulation, the payment cannot be made without this approval. *See id.* § 359.4(a)(1).

Neither Bancorp nor Hill filed a certification to enable Hill to receive his golden parachute payment, and, in January 2008, Hill filed this lawsuit. By the time of the jury trial, only two counts remained: breach of contract and contractual indemnification, each asserted against only Bancorp. Bancorp stipulated that the elements of the breach of contract claim were satisfied but raised the affirmative defense of legal impossibility, contending that the Golden Parachute Regulation made it impossible to pay Hill his

4

golden parachute payment.  The jury heard evidence relating to this defense and rendered a verdict in favor of Bancorp.

## II.  Discussion

"We review the District Court's evidentiary rulings principally for abuse of discretion."  *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).  "We review questions of law *de novo* . . . ."  *Orabi v. Attorney Gen.*, 738 F.3d 535, 539 (3d Cir. 2014).  Because none of the issues raised by Hill on appeal warrants reversal, we will affirm.

### A.  Whether Expert Testimony Should Have Been Permitted To Discuss Bancorp's Financial Condition

We will first address Hill's argument that expert testimony was improperly excluded from trial.  This testimony was offered to show that Bancorp was not in a "troubled condition."  Hill argues that the District Court erred as a matter of law in determining, at the summary judgment stage, that Bank was in a "troubled condition" as a result of the June 2007 OCC consent order, urging that he should have been permitted to adduce testimony from financial experts Paul Allen Schott and Michael Piracci regarding the financial condition of Bancorp.[2]

---

[2]  In his notice of appeal, Hill does not list the March 1, 2012 order denying summary judgment, notwithstanding that the summary judgment order is what determined that Bank was in a "troubled condition."  *See* Fed. R. App. P. 3(c) ("The notice of appeal must . . . designate the judgment, order, or part thereof being appealed.").  However, "there are circumstances under which we may review an order not specified in the notice of appeal . . . ."  *HIP Heightened Independence & Progress, Inc. v. Port Auth.*, 693 F.3d 345, 351 (3d Cir. 2012).  "[W]e can exercise jurisdiction over orders not specified in the Notice of Appeal if: '(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3)

Pursuant to the statute on golden parachutes, "troubled condition" is defined at 12 U.S.C. § 1831i(f), which in turn provides that each appropriate federal banking agency shall define the term by regulation. 12 U.S.C. § 1828(k)(4)(A)(ii)(III). The District Court concluded that the relevant regulation was a Federal Deposit Insurance Corporation ("FDIC") regulation, which defines "troubled condition" as, *inter alia*, "any insured state nonmember bank that . . . [i]s subject to a cease-and-desist order or written agreement issued by either the FDIC or the appropriate state banking authority that requires action to improve the financial condition of the bank." 12 C.F.R. § 303.101(c)(3). Hill urges that the second part of this definition—*i.e.,* "requires action to improve the financial condition of the bank"—was not met.

However, we conclude that the District Court applied the wrong regulation in deciding whether Bank was in a "troubled condition." Section 303.101(c) applies only when the FDIC is the appropriate regulatory agency and the bank is a state nonmember

---

the opposing party is not prejudiced and has a full opportunity to brief the issues.'" *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010) (quoting *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 144 (3d Cir. 1998)).

Here, Hill has appealed the order excluding expert testimony, which is inherently connected with the summary judgment order because it is based on that earlier order's determination that Bank was in a "troubled condition." Hill's intention to appeal the summary judgment order is apparent because the section of Hill's brief on this issue is focused on whether the summary judgment order was correct in concluding that Bank was in a "troubled condition." Bancorp is not prejudiced because Bancorp has fully briefed this issue. The parties were not even aware of this procedural difficulty until we mentioned it at oral argument. Thus, we will consider whether Bank was in a "troubled condition."

6

bank. *Id.* § 303.101(c). Here, Bank was not a state nonmember bank. Instead, as Hill concedes, Bank was a national banking association regulated by the OCC.[3]

The District Court's error does not help Hill, as the correct OCC regulation, 12 C.F.R. § 5.51(c)(6), is more damaging for him than the FDIC regulation. Under the OCC regulation, "[t]roubled condition" means, *inter alia,* a "national bank" that "[i]s subject to a cease and desist order, a consent order, or a formal written agreement, unless otherwise informed in writing by the OCC." 12 C.F.R. § 5.51(c)(6)(ii). It contains no caveat regarding whether the consent order requires the bank to take action to improve its financial condition. *Id.* Here, the OCC and Bank entered into a consent order on June 28, 2007, and Bancorp terminated Hill on June 28, 2007, effective July 31, 2007. The OCC did not inform Bank in writing that Bank was not in a "troubled condition." Thus, by definition, Bank was in a "troubled condition." *See id.*

Given the applicable definition, the District Court did not abuse its discretion in excluding expert testimony that Hill wished to use to cast doubt on whether Bancorp was in fact in a "troubled condition."

---

[3]     Hill urges that the OCC regulation does not apply because the OCC does not regulate Bancorp and because the regulation purportedly relates only to changes in officers and directors. These arguments are easily dismissed. By virtue of 12 C.F.R. § 359.0(b), the OCC regulation also applies to Bancorp. *See* 12 C.F.R. § 359.0(b) (applying the golden parachute provisions derivatively to "healthy holding companies which seek to enter into contracts to pay or to make golden parachute payments to [institution-affiliated parties] of a troubled insured depository institution subsidiary"). Hill's argument that the OCC regulation, 12 C.F.R. § 5.51(c)(6), concerns only changes in directors and officers under 12 U.S.C. § 1831i is belied by Congress's decision to include a cross-reference in the statute on golden parachutes, thereby borrowing the "definition in the regulations prescribed pursuant to [12 U.S.C. § 1831i(f)]." 12 U.S.C. § 1828(k)(4)(A)(ii)(III).

**B.  Whether the District Court Abused Its Discretion in Permitting Testimony**

Prior to trial, Hill moved to conduct more than ten depositions of Bancorp's former directors to explore Bancorp's impossibility defense.  The magistrate judge denied this motion.  After discovery closed, Bancorp sought to call the former directors as trial witnesses.  Hill objected, and the magistrate judge determined that it would be unfair and prejudicial to permit the directors to testify at trial, considering that a prior ruling had barred Hill from taking their depositions.  The magistrate judge ruled, however, that the directors could testify for Bancorp at trial if Bancorp allowed Hill to take a two-hour deposition of each individual witness.  The magistrate judge concluded that Hill would not be prejudiced by permitting the directors to testify if he were allowed to depose them in advance, as Hill then would not suffer unfair surprise.  Hill appealed the magistrate judge's decision, and the District Court affirmed.

Because Hill was permitted to depose the directors and in fact did depose them before trial, this issue is easily resolved.  The magistrate judge and District Court did not abuse their discretion in allowing the former directors to testify at trial.  The magistrate judge properly applied the five-factor test identified in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985) in deciding ultimately to permit the directors' testimony, considering: (1) the prejudice or surprise to the party against whom the evidence was offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood the admission of the late evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) the bad faith or

8

willfulness in failing to comply with the District Court's orders; and (5) the importance of the evidence to the proffering party. He also considered, "the fact that '[t]he Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony." (App. 9 (quoting *ABB Air Preheater, Inc. v. Regenerative Envtl. Equip. Co.*, 167 F.R.D. 669, 671 (D.N.J. 1996)).)

On appeal, Hill focuses exclusively on one of these five factors: bad faith in preventing Hill from deposing the directors earlier.[4] We find no evidence of bad faith in the record and would, in any event, be hard-pressed to reverse for abuse of discretion based on one factor of a five-factor test. The magistrate judge's requirement that Hill first be permitted to depose the directors before they testified cured any prejudice, and the trial was not disrupted. The District Court did not abuse its discretion in affirming the magistrate judge's ruling.

## C. Whether Denying the Motion To Amend the Final Pretrial Order Was an Abuse of Discretion

Hill argues that the District Court abused its discretion in denying Hill's motion to amend the final pretrial order to include the former directors as witnesses in Hill's case-in-chief. The magistrate judge concluded that what the former directors said in their depositions was "not a surprise" and that the directors' testimony provided "just

---

[4]     Specifically, Hill alleges that Bancorp engaged in a "bait and switch" tactic by objecting to Hill's earlier request to depose the directors. Originally unable to depose the directors, Hill instead deposed Bancorp's Rule 30(b)(6) representative. Hill claims that the directors' testimony contradicted the Rule 30(b)(6) representative's testimony. Bancorp persuasively argues that the witnesses' testimony was not contradictory.

cumulative evidence, in the Court's view." (Suppl. App. 90.) The District Court affirmed, finding that Hill had known "for years that these members of the Board would say that they wanted the Bank to pay Mr. Hill." (*Id.* at 104.)

A court may grant leave to amend a final pretrial order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). Here, Hill has failed to show that manifest injustice ensued. Bancorp had identified the former directors in its Rule 26 disclosures, and Hill was still able to cross-examine the directors at trial. Considering that Hill's motion to amend was made on the eve of trial, we hold that the refusal to amend the final pretrial order was not an abuse of discretion.

### D. Whether Giving the Supplemental Jury Instruction Was an Abuse of Discretion

The District Court's jury instructions provided that Bancorp "may make a Golden Parachute payment to plaintiff, Vernon Hill, of the monies owed Mr. Hill under the party's employment agreement only if the applicable Federal banking agencies determine that the payment is permissible." (2d Suppl. App. 33.) After hearing this and other instructions, the jury began deliberations. More than an hour into the jury's deliberation, the jury came to the Court with a question: "If we award for the plaintiff does this bypass federal approval?" (Suppl. App. 234.) The District Court called the jury back into court and stated, "The best way to answer that question is to tell you [12 C.F.R. §] 359 of which you're all experts now, states that the Bank cannot pay money to Mr. Hill without approval of the Federal regulators. I hope that answers your question." (*Id.* at 236.) Hill

10

urged that this instruction was error and that a new trial was required. The District Court disagreed.

This Court reviews supplemental jury instructions for abuse of discretion, meaning that Hill "must show that the [District] Court's action was 'arbitrary, fanciful or clearly unreasonable.'" *United States v. Jackson*, 443 F.3d 293, 297 (3d Cir. 2006) (quoting *Stich v. United States*, 730 F.2d 115, 118 (3d Cir. 1984)). We "review the supplemental instruction given not in artificial isolation, but . . . in the context of the overall charge." *Id.* (alteration in original) (quoting *United States v. Brennan*, 326 F.3d 176, 192 (3d Cir. 2003)) (internal quotation marks omitted).

In denying Hill's motion for new trial, the District Court gave myriad reasons to explain why the supplemental jury instruction was not improper. For instance, the supplemental jury instruction did not inject an irrelevant issue into the case, as "[t]he one thing that's crystal clear about this case is that everybody talked about [12 C.F.R. §] 359." (Suppl. App. 239.) Further, "there's absolutely no evidence whatsoever that the answer that [the District Court] gave in any way had any bearing whatsoever on the [verdict]," and "[n]o evidence whatsoever" that the supplemental jury instruction was incorrect. (*Id.* at 239-40.) According to the District Court, the supplemental jury instruction served a purpose of correcting a statement that Hill's counsel made at the end of his summation that the jurors could have misinterpreted as "an invitation to ignore [§] 359's prohibition," which would have been impermissible. (*Id.* at 241.) Further, "I don't know how the jury could possibly feel that I was telling them they couldn't award a verdict on monetary damages . . . ." (*Id.*)

11

The District Court did not abuse its discretion in giving the supplemental jury instruction. The District Court's supplemental jury instruction was consistent with a prior jury instruction—specifically that Bancorp "may make a Golden Parachute payment to [Hill] of the monies owed [Hill] under the party's employment agreement only if the applicable Federal banking agencies determine that the payment is permissible." (2d Suppl. App. 33.) Hill never objected to this prior jury instruction, nor did he offer an instruction in order to elucidate to the jury Hill's position that there was an alternative way by which Hill could be paid. Considering the full context and prior jury instruction, the District Court's reference to the regulation that was central to the trial is not so arbitrary, fanciful, or unreasonable as to constitute an abuse of discretion.

### III. Conclusion

We affirm: (1) the August 1, 2013 order denying Hill's motion for a new trial; (2) the May 22, 2013 order entering final judgment in favor of Bancorp on the jury verdict; (3) the District Court's trial rulings regarding admission of evidence, jury instructions and the jurors' question; (4) the April 25, 2013 order denying Hill leave to file for summary judgment; (5) the April 19, 24, and 26, 2013 orders denying Hill's motions to amend the joint final pre-trial order; (6) the February 15, 2013 order denying Hill's motion for reconsideration and ordering other relief; and (7) the April 26, 2012 order regarding admissibility of expert testimony. Further, we affirm the March 1, 2012 order deciding summary judgment to the extent that it is at issue in this appeal.

12