**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3962
_____

JAIME PINILLOS-PRIETO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A096-486-055)
Immigration Judge: Honorable Kuyomars Q. Golparvar

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 1, 2017

Before:  SHWARTZ, COWEN, and FUENTES, Circuit Judges

(Opinion filed:  June 5, 2017)
_____

OPINION*
_____

PER CURIAM

The Board of Immigration Appeals issued a final order directing that Jaime

Pinillos-Prieto, a native and citizen of Colombia, be removed from the United States.

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pinillos-Prieto has petitioned us to review the Board's order. We will dismiss the petition in part and deny the petition in part because Pinillos-Prieto has not raised any viable constitutional claims or legal questions.

Pinillos-Prieto entered the United States on a business visa in 2001. He was convicted in 2003 of federal drug-trafficking crimes, see Pinillos v. United States, 990 F. Supp. 2d 83, 88 (D.P.R. 2013), and eventually received a sentence of 188 months' imprisonment. That led the government to charge Pinillos-Prieto with removal as an alien convicted of an aggravated felony.

Pinillos-Prieto sought withholding of removal before an Immigration Judge. In that proceeding, he argued that his conviction was invalid because it was based on the perjured testimony of two Drug Enforcement Administration informants who also worked with the Colombian police. Pinillos-Prieto also asserted that he feared torture at the behest of those two informants. Pinillos-Prieto's fear was based on his beliefs that the two informants travel back and forth between the United States and Colombia, that they were involved in drug trafficking, and that they would track him down if he were forced to return home. The asserted motivation for that desire to harm Pinillos-Prieto was that the informants would not want their allegedly corrupt role in his trial to come to light. Pinillos-Prieto conceded, however, that neither informant had contacted him since his trial and that he did not know whether they were in Colombia. Pinillos-Prieto did not assert that any person would intend to harm him other than those two informants or their associates.

The IJ determined that Pinillos-Prieto was statutorily ineligible for withholding of

2

removal under both the Immigration & Nationality Act, see 8 U.S.C. § 1231(b)(3)(B)(ii), and the Convention Against Torture ("CAT"), see 8 C.F.R. § 1208.16(c)(4) and (d)(2), because his narcotics crime was an aggravated felony that was also a particularly serious crime. And while Pinillos-Prieto was still potentially eligible for deferral of removal under the CAT, see 8 C.F.R. § 1208.16(c)(4), the IJ concluded that Pinillos-Prieto had not established that it was more likely than not that he would be tortured if removed to Colombia. The IJ thus denied all relief.

Pinillos-Prieto appealed to the Board and moved that the Board reopen his case to consider what he called additional evidence in support of his contention that he was innocent of his drug-trafficking crime. The Board dismissed the appeal as meritless and denied the motion to reopen. Pinillos-Prieto then filed this petition for review.

We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a). In cases involving criminal aliens who are deemed removable under § 1227(a)(2), like Pinillos-Prieto, the scope of our review is narrower. In such cases, we may entertain only constitutional claims and questions of law, and lack jurisdiction to review any factual or discretionary determinations. See 8 U.S.C. §§ 1252(a)(2)(C)-(D).

Pinillos-Prieto raises three main issues. First, he argues that the Board used the wrong legal standard concerning the meaning of acquiescence in torture, ignored evidence of acquiescence in the record, and applied the wrong standard of review to the IJ's denial of deferral of removal. Second, he argues that his underlying aggravated-felony conviction is invalid. Third, he argues that the Board abused its discretion when it denied his motion to reopen.

3

We may readily dispose of the latter two arguments. Pinillos-Prieto's contention that his 2003 drug-trafficking conviction is unlawful does not present a cognizable constitutional claim or legal issue, let alone a meritorious one: he may not collaterally attack his criminal judgment in removal proceedings. See Orabi v. Att'y Gen., 738 F.3d 535, 543 (3d Cir. 2014); Drakes v. INS, 330 F.3d 600, 603 (3d Cir. 2003). Nor does Pinillos-Prieto's challenge to the Board's discretionary denial of his motion to reopen present a constitutional claim or legal issue. See Cruz v. Att'y Gen., 452 F.3d 240, 246-47 (3d Cir. 2006).

Pinillos-Prieto's merits argument that the Board applied the wrong legal standard for torture claims and applied the wrong standard of review to the IJ's decision, however, potentially raises a colorable constitutional or legal claim. Questions of law may encompass both "pure questions of law" and also "issues of application of law to fact, where the facts are undisputed and not the subject of challenge." Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005) (internal quotation marks and citations omitted). Here, the question of what legal standard applies for torture claims and what standard of review the Board should apply to review such claims implicates a legal issue, and is not merely a disagreement with the agency's underlying factual findings. We therefore have jurisdiction to consider that aspect of Pinillos-Prieto's petition for review.

To succeed on a CAT claim, a petitioner must demonstrate "'that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal.'" Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 1208.16(c)(2)). To provide a basis for relief, however, the torture must be "by or at the

4

instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). The IJ must first determine what is likely to happen to the petitioner, and then must determine whether those probable events amount to the legal definition of torture. Myrie v. Att'y Gen., No. 16-1599, 2017 WL 1526272, at *5 (3d Cir. Apr. 28, 2017). The Board reviews the first question for clear error and reviews the second question de novo. Id.

When the basis for the torture claim is government acquiescence, the IJ first "makes a factual finding or findings as to how public officials will likely act in response to the harm the petitioner fears. Next, the IJ assesses whether the likely response from public officials qualifies as acquiescence under the governing regulations." Id. Again, the Board reviews the first question for clear error and the second question de novo. Id. This Court has held that one way a petitioner can show that a government acquiesces in torture is if it is "willfully blind" to such activities. See Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 65 (3d Cir. 2007). A government can be found to be willfully blind "even if it was unable to control those engaged in torturous activity." Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 311 (3d Cir. 2011).

In this case, the IJ specifically mentioned that a CAT claim could be based on the "willful blindness" of a public official, but found that Pinillos-Prieto had not shown that it was more likely than not that he would be harmed at all. The IJ first made factual findings about what is likely to happen to Pinillos-Prieto if removed to Colombia. The IJ considered Pinillos-Prieto's testimony and noted that the two informants had not contacted him, and that he did not know their whereabouts. The IJ then found that there

5

was "insufficient evidence to demonstrate that these individuals are even still interested in [Pinillos-Prieto] in any way." Based on that finding, the IJ then concluded that no "public official would consent or acquiesce to torture or murder of the applicant."

In Pinillos-Prieto's administrative appeal, the Board announced that it reviewed factual findings for clear error and "all other issues, including whether the parties have met their relevant burden of proof, and issues of discretion, under a de novo standard." The Board then stated that the IJ had "properly found" that the two informants' whereabouts were unknown, that they had not contacted Pinillos-Prieto, and that there was no evidence that they remained interested in Pinillos-Prieto in any way. The Board concluded that the IJ was therefore correct to determine that Pinillos-Prieto had not presented evidence that could show that he would be harmed in any way upon his return to Colombia, calling Pinillos-Prieto's testimony "too speculative."

There is thus no error apparent in the Board's analysis. It correctly cited its standard of review and did not improperly treat any legal conclusions as factual determinations. The conclusion that no government official could be said to acquiesce in Pinillos-Prieto's torture, when Pinillos-Prieto had not established that he would be harmed in the first place, was fully consistent with the applicable legal standards. Furthermore, there is no indication that the Board ignored any relevant evidence. Consequently, to the extent that this argument is properly construed as a legal issue over which we have jurisdiction, it has no merit.

6

For these reasons, we will dismiss the petition for review in part for lack of jurisdiction, and deny it to the extent that it raises a legal issue.[1]

---

[1] Pinillos-Prieto's motion to reconsider the Court's April 28, 2017 order denying his motion for a stay of removal is denied. For the reasons set forth above, the Court's prior order correctly ruled that Pinillos-Prieto's motion to stay his removal did not raise any claims subject to our jurisdiction that were likely to succeed on the merits. Moreover, in light of our disposition of Pinillos-Prieto's petition for review, any request to reconsider our prior order is now moot.