**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2058
_____

ASKIN OZTURK,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No. A220-903-271)
Immigration Judge: Adam Panopoulos
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 14, 2025
_____

Before:  SHWARTZ, KRAUSE, and CHUNG, <u>Circuit Judges</u>

(Filed: April 1, 2025)
_____

OPINION[*]
_____

CHUNG, <u>Circuit Judge</u>.

---

[*]     This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Askin Ozturk[1] petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal from the Immigration Judge's ("IJ") determination that Ozturk was ineligible for asylum or withholding of removal. We will deny Ozturk's petition for review because the BIA correctly determined that Ozturk provided material support to a Tier III terrorist organization and was therefore ineligible for asylum or withholding of removal.

I. BACKGROUND[2]

Ozturk, his spouse, and his minor children, natives and citizens of Turkey, entered the United States without inspection on January 30, 2022. On January 31, 2022, the Department of Homeland Security issued Ozturk a notice to appear pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). Ozturk filed an application for asylum and withholding of removal.

The IJ determined that Ozturk was statutorily barred from asylum, withholding of removal, and withholding under the Convention Against Torture ("CAT") pursuant to 8 U.S.C. § 1182(a)(3)(B)(iv)(VI) because Ozturk had provided material support to a Tier III terrorist organization. Specifically, the IJ found that Ozturk held a leadership position in an organization called the Grey Wolves and found that the Grey Wolves were a Tier III terrorist organization. The BIA dismissed the appeal, concluding that the IJ's factual findings underlying the IJ's determinations were not clearly erroneous.

---

[1]     Ozturk's spouse and minor children sought asylum as Ozturk's derivative beneficiaries before the IJ and BIA.

[2]     Because we write for the parties, we recite only facts pertinent to our decision.

II.   DISCUSSION[3]

On appeal, Ozturk challenges the BIA's order dismissing his appeal of the IJ's determination that he was subject to the terrorism bar for asylum and withholding of removal.[4]   "We may only consider the reasons provided by the [BIA], but where the [BIA] both adopts the findings of the Immigration Judge and discusses some of the bases for the Immigration Judge's decision, we have authority to review the decisions of both the Immigration Judge and the [BIA]."  Saravia v. Att'y Gen., 905 F.3d 729, 734 (3d Cir. 2018) (cleaned up).  "We review the agency's factual findings under the highly deferential substantial-evidence standard: The agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  Sunuwar v. Att'y Gen., 989 F.3d 239, 247 (3d Cir. 2021) (internal citations and quotations omitted).  "We review questions of law de novo," Saravia, 905 F.3d at 734, including "the legal determination of whether a group falls within the definition of an

---

[3]   "We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252."  Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015).

[4]   Ozturk also argues that the IJ erroneously concluded that Ozturk has not suffered past persecution on account of his political opinion and that he has no well-founded fear of future persecution.  Since the BIA did not base its denial on the latter two points, we may not consider those arguments.  Saravia v. Att'y Gen., 905 F.3d 729, 734 (3d Cir. 2018) ("We may only consider the reasons provided by the Board …."); Orabi v. Att'y Gen., 738 F.3d 535, 539 (3d Cir. 2014).  In his statement of issues, Ozturk suggests he is also challenging whether the IJ and BIA made sufficient credibility determinations.  Ozturk does not brief this argument, though, so it is forfeited.  John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

3

undesignated terrorist organization." Uddin v. Att'y Gen., 870 F.3d 282, 289 (3d Cir. 2017).

The terrorism bar "precludes aliens" who have provided material support to a terrorist organization "from seeking several forms of relief, including withholding of removal" and asylum. Id. at 284; see 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). The INA has established three tiers of terrorist organizations. Uddin, 870 F.3d at 284-85; 8 U.S.C. § 1182(a)(3)(B)(vi). Tier III terrorist organizations "are groups 'of two or more individuals, whether organized or not, which engage[ ] in, or [have] a subgroup which engages in,' terrorist activity." Uddin, 870 F.3d at 285 (alterations in original) (quoting 8 U.S.C. § 1182(a)(3)(B)(vi)(III)).

"[T]he Government must introduce evidence 'indicat[ing]' that a group qualifies as a Tier III terrorist organization. Then, the burden shifts to the applicant to prove 'by a preponderance of the evidence' that the bar does not apply." Id. (second alteration in original) (quoting 8 C.F.R. § 1208.16(d)(2)).

Ozturk first challenges the sufficiency of the evidence supporting the IJ's determination, adopted by the BIA, that the Grey Wolves were "engage[d] in terrorist activity." Id. The IJ cited evidence that the Grey Wolves "committed over 600 political murders" and "planned the 1981 assassination attempt of Pope John Paul II." AR 56. The IJ also concluded that the Grey Wolves engaged in torture, citing Ozturk's testimony that "he witnessed other members bring dissidents into Grey Wolves meeting halls and beat the soles of their feet with batons." AR 57. This is substantial evidence of terrorist

4

activity.  See 8 U.S.C. § 1182(a)(3)(B)(iii)(IV), (V)(b), (VI); 8 U.S.C. § 1182(a)(3)(B)(iv)(I), (II).

Ozturk presents two arguments for why the Grey Wolves are nonetheless not a terrorist organization.  Each argument fails.

First, he argues that the Grey Wolves are not an official organization, with no membership records or structured hierarchy.  The definition of a Tier III terrorist organization, however, is simply, "a group of two or more individuals, *whether organized or not*, which engages in, or has a subgroup which engages in, [activities defined as engagement in terrorist activity]."  8 U.S.C. § 1182(a)(3)(B)(vi)(III) (emphasis added).  Because the statute does not require formal organization or hierarchy, Ozturk's first argument fails.

Ozturk next argues that the Grey Wolves are not a Tier III terrorist organization because there is no evidence that the acts of terrorism identified by the BIA and IJ were authorized by leadership, as Uddin requires.  Uddin, 870 F.3d at 284 ("[U]nless the agency finds that party leaders authorized terrorist activity committed by its members, an entity … cannot be deemed a Tier III terrorist organization.").  The BIA's finding that the acts of terrorism were authorized by leadership rested upon the Government's evidence that the Grey Wolves had a "regimented, top-down organizational structure" "with a clear chain of command through which leadership communicates its orders," and evidence that the Grey Wolves' leadership authorized the many international incidents in which the Grey Wolves played a central role.  AR 57.  In addition, Ozturk himself testified that the "head of the Grey Wolves" gave members instructions to torture the members of the Grey

5

Wolves who did not obey orders. AR 140. In other words, there is substantial evidence that Grey Wolves' leadership authorized the acts of terrorism and that the acts of terrorism were carried out by specific "inside members" of the Grey Wolves. AR 139-42. While Ozturk argued that "[i]t is not clear who exactly leads the Grey Wolves," this assertion does not rebut the substantial evidence in the record, including Ozturk's own testimony, that leadership authorized the acts of terrorism. Opening Br. at 6; Uddin, 870 F.3d at 285. We therefore conclude that the BIA did not err in designating the Grey Wolves a Tier III terrorist organization.

There was also substantial evidence to support the BIA's determination that Ozturk provided material support to the Grey Wolves. Ozturk testified that he "recruited many new members into the group, purchased supplies for events … and served as a leader for the organization." Appx. 5. These are "act[s] that [Ozturk] … reasonably should know, afford[ed the Grey Wolves] material support." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI); see also Sesay v. Att'y Gen., 787 F.3d 215, 221 (3d Cir. 2015) (collecting cases and noting that "the BIA and Courts of Appeals have repeatedly upheld findings that an alien's" relatively low-level support is material); Singh-Kaur v. Ashcroft, 385 F.3d 293, 294 (3d Cir. 2004) ("[P]roviding food and setting up shelter for people engaged in terrorist activities constitutes affording material support …." (internal quotations omitted)); Matter of A-C-M-, 27 I. & N. Dec. 303, 309-10 (BIA 2018) (concluding that cooking and cleaning constitutes material support).

"If an alien is deemed a member of a Tier III organization, then he can avoid the terrorism bar if he can 'demonstrate by clear and convincing evidence that [he] did not

know, and should not reasonably have known, that the organization was a terrorist organization.'" Uddin, 870 F.3d at 285 (alteration in original) (quoting 8 U.S.C. § 1182(a)(3)(B)(i)(VI)).  Ozturk argues that he did not know and could not have known the Grey Wolves were a terrorist organization because he was not a member.  Ozturk did not raise this argument before the BIA, and we therefore cannot consider it.  AR 33-35; See Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005) (stating that a noncitizen "must exhaust all administrative remedies *available to him as of right* before the BIA as a prerequisite to raising a claim before us." (emphasis in original)).

III.    CONCLUSION

For the foregoing reasons, we will deny the petition for review.