NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2599
_____

THOMAS TRAUMANN,
                                    Appellant

v.

JAMES A. FUNT; CAROLINE A. CINQUANTO
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:24-cv-00486)
District Judge:  Honorable Joshua D. Wolson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 18, 2025
Before:  HARDIMAN, MATEY, and CHUNG, Circuit Judges

(Opinion filed: June 24, 2025)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Thomas Traumann appeals the District Court order dismissing his complaint as barred by the statute of limitations. Because the District Court properly dismissed the complaint as time barred, we will affirm.

I.

Traumann brought his complaint against his former criminal defense lawyers, James Funt and Caroline Cinquanto, on January 30, 2024. He filed the operative amended complaint in June 2024, which alleged tortious legal malpractice, among other claims. Appellees moved to dismiss the complaint. The District Court dismissed Traumann's complaint, finding that it was barred by Pennsylvania's two-year statute of limitations for criminal legal malpractice claims.[1] Traumann timely appealed.[2]

II.

On appeal, Traumann argues that the District Court erred in determining the statute of limitations on his legal malpractice claims began to run no later than July 6, 2021, the date he filed his pro se Compassionate Release Motion. Traumann contends that Pennsylvania's doctrine of fraudulent concealment and discovery rule equitably

---

[1] While Traumann's amended complaint named a variety of claims, the District Court concluded all of his claims sounded in legal malpractice. Traumann has not challenged that conclusion, so we will follow suit. See, e.g., Lara v. Comm'r Pa. State Police, 125 F.4th 428, 432 n.5 (3d Cir. 2025) (reiterating that "[a]n issue is [forfeited] unless a party raises it in its opening brief" (quotation marks omitted)).

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a dismissal under Federal Rules of Civil Procedure 12(b)(6) is plenary. Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016).

tolled the statute of limitation until February 2022, "when the injury was brought to his attention by his prison legal advisors," thus making his complaint timely.

Under Pennsylvania law, legal malpractice claims sounding in tort or "trespass" have a two-year statute of limitations. 42 Pa. C.S. § 5524(7); see also Bailey v. Tucker, 621 A.2d 108, 116 n.17 (Pa. 1993). The statute of limitations begins to run "at the time the harm is suffered or, if appropriate, at the time the alleged malpractice is discovered." Bailey, 621 A.2d at 115 (citation omitted). Specifically, for criminal legal malpractice claims, the injury is the conviction, and is deemed to have occurred at the time of sentencing. Id. at 116. The Pennsylvania Supreme Court appreciated that defendants may not immediately know whether it was their own actions or their attorney's actions that caused the injury. Id. It thus held that "the appropriate starting point [for the statute of limitations] [wa]s the termination of the attorney-client relationship, since at that point the aggrieved defendant is aware of the injury (i.e., the conviction), and is on clear notice to investigate any alternate cause of that harm which he believes to exist." Id.; see also Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 674 A.2d 244, 247–48 (Pa. Super. Ct. 1996) (explaining that Bailey "applied the discovery rule tolling the statute of limitations until the defendant became aware that his attorney was responsible for the harm," which "occurred when the attorney client relationship was terminated").

Here, the District Court properly determined that the statute of limitations began to run no later than July 6, 2021, the date the criminal trial court docket reflects Traumann

filed his pro se Compassionate Release Motion.[3]  Traumann argues that date is irrelevant to the question of the statute of limitations because his motion did not attack his conviction or his attorneys' action.  However, his filing of a pro se motion indicates that by that date, Appellees' representation of him had ceased, and thus created "the appropriate starting point" for the statute of limitations.  See Bailey, 621 A.2d at 116 ("On November 3, 1978, appellant filed a pro se petition to vacate his sentence.  Accordingly, at least as of that date, appellee [attorney's] services had been terminated, and the statute of limitations . . . had begun to run.").

Traumann's arguments regarding the discovery rule and the doctrine of fraudulent concealment are similarly unavailing.  He argues that he could not have brought his claims until he learned in prison about an amendment to his statute of conviction.[4]  But

---

[3]  Statutes of limitations are affirmative defenses that may only be addressed on a Rule 12(b)(6) motion if a claim's untimeliness is apparent on the face of the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).  "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).  Here, the District Court properly looked to the criminal trial docket, as a "matter[] of public record" to determine when the statute of limitations began to run on Traumann's claims.  See Orabi v. Att'y Gen., 738 F.3d 535, 537 n.1 (3d Cir. 2014).

[4]  As we explained in affirming the denial of Traumann's motion for compassionate release: "The amended version is facially broader than the version to which Traumann pleaded guilty and appears to have codified the longstanding interpretation of the prior version that the Government need not prove that the defendant's sole purpose in traveling was to engage in sexual activity.  United States v. Hayward, 359 F.3d 631, 638 (3d Cir. 2004).  There is no reason to believe that Traumann would have received a more favorable outcome—or would not have pleaded guilty—under the amended statute." United States v. Traumann, No. 23-2985, 2024 WL 4357746, at *3 (3d Cir. Oct. 1, 2024) (non-precedential).

Robbins explained that Bailey already "applied the discovery rule" when it tolled the statute of limitations in criminal legal malpractice claims from the date of sentencing to the date when the attorney-client relationship is terminated. See Robbins, 674 A.2d at 247–48. Moreover, "[t]he polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge," DiDomizio v. Jefferson Pulmonary Assocs., 280 A.3d 1039, 1046 (Pa. Super. Ct. 2022) (quotation marks omitted), and the termination of his relationship with Appellees "placed [him] on notice to discover" the cause of any injury, Bailey, 621 A.2d at 116. Finally, Traumann has not showed that the fraudulent-concealment doctrine applies. See generally Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 443 (Pa. Super. Ct. 2003); Fine v. Checcio, 870 A.2d 850, 860 (Pa. 2005).

## III.

For the foregoing reasons, we will affirm the District Court's judgment.[5]

---

[5] Both Appellees and Appellant filed motions for leave to file a supplemental appendix. We grant both motions. However, although we are following our usual practice by taxing costs in favor of Appellees as the prevailing party, taxable costs shall not include the costs of Appellees' supplemental appendix because those documents were already included in Appellant's appendix.