08-5785-ag
Xia Huang v. Eric Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2009

(Argued: November 23, 2009                              Decided: January 12, 2010)

Docket No. 08-5785-ag

————————

XIA FAN HUANG,

*Petitioner*,

—v.—

ERIC H. HOLDER JR., UNITED STATES ATTORNEY GENERAL,[*]

*Respondent*.

————————

B e f o r e :

FEINBERG, WALKER and KATZMANN, *Circuit Judges*.

————————

Petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming the May 24, 2005 decision of Immigration Judge ("IJ") Douglas Schoppert, denying Petitioner Xia Fan Huang's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Xia Fan Huang*, No. A096 395 211 (B.I.A. Oct. 28, 2008), *aff'g* No. A096 395 211 (Immig. Ct. N.Y. City May 24, 2005). The petition for review is denied.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder Jr. is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case.

DAVID X. FENG, New York, New York, *for Petitioner.*

KILEY L. KANE, Trial Attorney (Michael F. Hertz, Acting Assistant Attorney General, Civil Division, Jennifer L. Lightbody, Senior Litigation Counsel, *of counsel*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., *for Respondent.*

_____

PER CURIAM:

This case calls upon us in principal part to determine whether the opinion of the Board of Immigration Appeals ("BIA") in *In re M-F-W & L-G*, 24 I. & N. Dec. 633 (BIA 2008), describing when forced insertion of an intrauterine device ("IUD") constitutes persecution, is a permissible interpretation of the Immigration and Nationality Act ("INA"). Petitioner Xia Fan Huang seeks review of a decision of the Board of Immigration Appeals affirming the May 24, 2005 decision of Immigration Judge ("IJ") Douglas Schoppert, denying her applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Xia Fan Huang*, No. A096 395 211 (B.I.A. Oct. 28, 2008), *aff'g* No. A096 395 211 (Immig. Ct. N.Y. City May 24, 2005). We hold that the agency's interpretation is entitled to deference, and therefore deny the petition for review.

## BACKGROUND

Xia Fan Huang is a native and citizen of the People's Republic of China ("China") who entered the United States in June 2004 without valid entry documents and was placed in removal proceedings. In December 2004, Huang submitted applications for asylum, withholding of removal, and relief under the Convention Against Torture. In the statement attached to her application, Huang claimed that (1) she feared persecution because her father is wanted by the

local public security bureau because he practices Falun Gong, (2) she had an IUD inserted following the birth of her only child, but fears persecution because she had it removed by a doctor in the United States, (3) although she is divorced and her husband has custody of their only son, she will be unable to have children if she remarries (which she desires), (4) she will be forced to undergo an abortion or sterilization if she becomes pregnant, and (5) she will be tortured if returned to China because she departed China illegally.

In May 2005, at the conclusion of a hearing on the merits of Huang's claims, the IJ found that she had not demonstrated eligibility for relief. The IJ concluded, *inter alia*, that a forced IUD insertion does not constitute persecution.[1] Huang filed a timely appeal with the BIA, arguing that a forced IUD insertion amounts to persecution. In October 2006, the BIA dismissed Huang's appeal in a non-precedential opinion. The BIA held that while a forced IUD insertion is "an intrusion on the respondent's body," it does not rise to the level of persecution. With regard to Huang's fear of future persecution, the BIA concluded that her claim that she would be forced to undergo an abortion or sterilization if she became pregnant with a second child was too speculative to merit relief because Huang had only one child, was not married, and was not pregnant.

Huang timely petitioned for review of the BIA's decision. In September 2007, this Court granted Huang's petition and remanded the case to the BIA for reconsideration in light of our prior decision in *Ying Zheng v. Gonzales*, 497 F.3d 201 (2d Cir. 2007). *See Xia Fen Huang v. U.S. Dep't of Justice*, No. 06-5420-ag, 248 Fed. App'x 214 (2d Cir. Sept. 20, 2007). On remand,

---

[1] Huang has abandoned or waived any challenge to the agency's adjudication of her claims that she would be persecuted because her father practices Falun Gong or because she left China illegally. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n.1, 545 n.7 (2d Cir. 2005). She has also waived any challenge to the agency's denial of CAT relief. *Id.* Therefore, we do not discuss these claims.

3

the BIA again dismissed Huang's appeal. The BIA found that "insertion of an IUD does not rise to the level of harm necessary to constitute persecution, absent some aggravating circumstance, which is not present in this case. Moreover, the respondent has not shown that the insertion of an IUD was or would be on account of a protected ground." *In re Xia Fan Huang*, No. A096 395 211 (B.I.A. Oct. 28, 2008) (*citing Matter of M-F-W- & L-G*, 24 I. & N. Dec. 633 (BIA 2008)).

Huang timely petitioned this Court for review of the BIA's decision.

## DISCUSSION

We have jurisdiction to review final orders of removal. *See* 8 U.S.C. § 1252(d). When the BIA does not adopt the decision of the IJ to any extent, we review only the decision of the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). Here, following Huang's petition for review of the BIA's decision denying relief, her case was remanded for the limited purpose of allowing the BIA to reconsider its decision in light of this Court's holding in *Ying Zheng v. Gonzales*, 497 F.3d 201 (2d Cir. 2007). On remand, the BIA issued a brief opinion addressing only the issue presented in *Ying Zheng*, i.e., whether the insertion of an IUD constitutes persecution, and leaving intact the remainder of its conclusions in its original decision. Therefore, we review the BIA's original opinion as modified by its subsequent decision, which constitutes the agency's final order of removal. *See* 8 U.S.C. § 1252(d). We review the agency's factual findings under the substantial evidence standard. *See id.* § 1252(b)(4)(B); *see also Corovic v. Mukasey*, 519 F.3d 90, 95 (2d Cir. 2008). We review *de novo* questions of law and the application of law to undisputed fact. *See Salimatou Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008).

The Attorney General may grant asylum to an alien if he determines that the alien is a "refugee." 8 U.S.C. § 1158(b)(1)(A); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987). Section 101(a)(42) of the Immigration and Nationality Act defines a refugee as one who has

4

suffered persecution, or has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 added the following language to the definition of a refugee:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted *on account of political opinion*, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution *on account of political opinion*.

*Id.* (emphasis added).

In *Ying Zheng*, 497 F.3d at 203-04, we remanded a case to the BIA to articulate, in a published, precedential opinion, its position concerning whether, and under what conditions, the forced insertion of an IUD constitutes persecution. The BIA did so in *In re M-F-W & L-G*, 24 I. & N. Dec. 633 (BIA 2008). In that case, the BIA held that the amendment to the INA creates two categories of aliens who are deemed refugees *per se*, in that "'their political opinion exists *de jure* rather than as a matter of fact on which the applicant bears the burden of proof'": those who have been forced to abort a pregnancy, and those who have been forced to undergo involuntary sterilization. *Id.* at 635-36 (*quoting Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 307 (2d Cir. 2007) (en banc)). The BIA concluded that neither category applies to a forced IUD insertion, as being forced to use an IUD does not amount to being forced to abort a pregnancy or being sterilized. *Id.* at 636. According to the BIA, IUD use should not be treated as the equivalent of sterilization because "to sterilize" means "to make sterile" and "sterile" means "incapable of sexual reproduction." *Id.* This definition implies that sterilization is permanent and leaves one permanently incapable of having children. *Id.* Unlike sterilization, IUD use is a

"temporary measure meant to provide for birth planning and not to remove all possibility of future birth opportunities." *Id.*

The BIA also held that, beyond the two categories of those who are deemed refugees *per se*, the amendment includes in the definition of a refugee one who establishes that (1) she otherwise resisted China's family planning policy, (2) she was persecuted or has a well-founded fear of future persecution, and (3) the persecution was or would be because of her resistance to the family planning policy. *Id.* at 637. In terms of "other resistance to a coercive population control program," the BIA held that removing an IUD or failing to attend a mandatory gynecological appointment constitutes such resistance because it thwarts the goals of the family planning policy. *Id.* at 638. As to persecution, the BIA held that a forced IUD insertion, without aggravating circumstances, does not constitute persecution. Neither does reinsertion of an IUD after the removal of an IUD (without aggravating circumstances), or regularly required gynecological exams. *Id.* at 640-42. Finally, even if a forced IUD insertion is accompanied by aggravating circumstances sufficient to rise to the level of persecution, under the third prong of the analysis a petitioner must still establish that the persecution is *because of* her resistance to China's family planning policy. *Id.* at 642. In terms of the required nexus, the BIA held that an IUD that is reinserted not to punish the alien's resistance to the family planning policy, but merely because reinsertion is standard procedure in China, even if an IUD falls out on its own, is not sufficient to establish the required nexus. *Id.* at 643. Therefore, the BIA considered whether, in the case before it, the alien's IUD was inserted to punish her for some earlier resistance to China's population control program, or instead as a routine part of the family planning policy. *Id.*

On appeal, Huang argues that *In re M-F-W & L-G* was wrongly decided and is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467

6

U.S. 837, 842-44 (1984). Huang argues that the cumulative effect of having an IUD inserted and regularly examined constitutes sterilization.

> Although an IUD is not permanent sterilization, it prevented Ms. Huang from becoming pregnant again and therefore, left her effectively sterilized so long as it remained in place . . . . there is absolutely nothing within the word "incapable" that mandates permanence. The IUD rendered Ms. Huang "*incapable* of having children." Thus, she was, under the Board's own use of a standard English definition, sterilized.

Pet'r Br. 22. Huang also argues that her forced IUD insertion, an invasive procedure that left a device in her body, constitutes persecution because it is a "flagrant violation of fundamental rights, including the right to reproductive choice and bodily integrity." *Id.* 15, 20-21. In the alternative, she argues that even if her forced IUD insertion does not constitute persecution, the cumulative effect of the insertion plus invasive quarterly check-ups does rise to the level of persecution.

When reviewing the BIA's interpretation of the INA, we employ the familiar two step inquiry set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 842-44. Under this analysis, we first ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. To uphold the agency's construction, we "need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11. Instead, we will defer to the agency's interpretation as long as that interpretation is "'reasonable.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007) (*quoting Chevron*, 467 U.S. at 844). In other words, even where we think that an alternative version is

preferable, binding precedent dictates that we are without authority to impose it if the agency's ruling is permissible. We thus rule within narrow parameters.

In this case, Congress has not determined whether a person who has been forced to have an IUD inserted is a refugee, whether an IUD insertion constitutes sterilization, or whether a forced IUD insertion constitutes persecution. Therefore, we proceed to step two of the *Chevron* analysis. Under step two, we conclude that the BIA's conclusion that an involuntary IUD insertion is not an involuntary sterilization is permissible. The BIA's reasoning that sterilization makes one permanently incapable of having children, whereas an IUD is a temporary measure, is reasonable. We therefore conclude that the BIA's interpretation that a forced IUD insertion is not a *per se* ground for granting asylum is entitled to deference.

As to the "other resistance" prong of the refugee definition, we need not consider Huang's challenge to the BIA's determination that involuntary IUD insertion, or involuntary IUD insertion plus mandatory gynecological check-ups, does not constitute persecution because Huang does not challenge the BIA's conclusion that she failed to establish that the insertion of the IUD was or would be on account of her resistance to China's family planning policy. She also does not challenge the BIA's determination that the persecution at issue must be the result of resistance to the family planning policy in order to fall under the terms of statute. Therefore, any such challenge is deemed waived. *See Yueqing Zhang*, 426 F.3d at 541 n.1, 545 n.7.

We have considered all of Huang's other arguments and find them without merit.

**CONCLUSION**

For the foregoing reasons, the petition for review is denied.[2]

_____

[2] As we have completed our review, the pending motion for a stay of removal in this petition is dismissed as moot.

8