KATZMANN, Circuit Judge,
concurring:
I concur in the Court’s judgment and agree with its reasoning. I write separately simply to add my views on the question the Court’s opinion does not reach, namely, whether we owe deference to the BIA’s opinion in In re EspinozarGonzalez, 22 I. & N. Dec. 889 (BIA 1999).
In Espinoza-Gonzalez, the BIA interpreted the meaning of 8 U.S.C. § 1101(a)(43)(S), a definitional section of the statute the BIA is charged with administering: the Immigration and Nationality Act (“INA”). When reviewing the agency’s interpretation of the statute it administers, we employ the familiar two step inquiry set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). At Chevron step one, we first ask “whether Congress has directly spoken to the precise quéstion at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Id. at 842-43, 104 S.Ct. 2778. If, however, “the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute.” Id. at 843, 104 S.Ct. 2778.
In this case, 8 U.S.C. § 1101(a)(43)(S) does not define the term “relating to obstruction of justice” by reference to state law or to another portion of the United States Code; in fact, Section 1101(a)(43)(S) does not define the phrase at all. The absence of a definition is particularly significant'here because many of the aggravated felonies listed in Section 1101(a)(43) are, in fact, defined by references to the United States Code. For example, the term “illicit trafficking in a controlled substance” is defined by reference to Section 102 of the Controlled Substances Act, 21 U.S.C. § 802. See 8 U.S.C. § 1101(a)(43)(B). Similarly, the subsection regarding “illicit trafficking in firearms or destructive devices ... or in explosive materials” specifically defines “destructive devices” by reference to 18 U.S.C. § 921, and “explosive materials” by reference to 18 U.S.C. § 841(c). Indeed, many of the offenses listed under 8 U.S.C. § 1101(a)(43) are described first by reference to provisions in the United States Code, and only later by parenthetical descriptions of the general nature of the crime. See, e.g., 8 U.S.C. § 1101(a)(43)(H) (listing as an aggravated felony “an offense described in section 875, 876, 877, or 1202 of Title 18[, United States Code] (relating to the demand for or receipt of ransom)”).
Only a minority of the subsections under 8 U.S.C. § 1101(a)(43) contain no description or elaboration whatsoever. In addition to 8 U.S.C. § 1101(a)(43)(S), another undefined subsection is 8 ■ U.S.C. § 1101(a)(43)(A), which specifies that the *108 crimes of “murder, rape, [and]- sexual abuse of a minor” are aggravated felonies. In interpreting the phrase “sexual abuse of a minor,” the Third Circuit observed:
Section 1101 (a)(43)(A) is devoid of any descriptive or restrictive parentheticals and simply lists the crimes of “murder, rape, or sexual abuse of a minor” without further definition. When contrasted with the structure of the statute as a whole, such an omission is instructive, for it is typically understood that the legislature proceeds purposefully when it inserts specific language in one statutory section but omits it in another. In other § 1101(a)(43) sections, Congress specified certain aggravated felonies by cross-referencing criminal statutory provisions. The fact that it did not do so with “sexual abuse of a minor” indicates that it intended that the phrase be given its common law definition. Alternatively, Congress may have intended for the BIA to utilize its expertise to define the phrase, or it may have inserted the generic phrase because the definition of sexual abuse of a minor varies by state and federal law. In any case, the pertinent point is that the precise definition of the phrase is most assuredly not clear and unambiguous.
Restrepo v. Att’y Gen. of U.S., 617 F.3d 787, 793 (3d Cir.2010) (internal citations and footnote omitted).
So too in this case, the INA is silent on the meaning of “relating to obstruction of justice.” It includes no indication of what specific crimes, or even what types of crimes, may qualify as “offenses relating to obstruction of justice.” Nor does the INA specify where one should look for interpretive guidance. Thus, because the INA is silent with respect to the specific issue at hand, I believe the statute is most assuredly not' “clear and unambiguous,” see, e.g., Bodansky v. Fifth on the Park Condo, LLC, 635 F.3d 75, 86 (2d Cir.2011), and that we must proceed to Chevron step two.
At Chevron step two, we must consider whether the agency’s resolution of the ambiguity is based on a permissible construction of the statute. Chevron, 467 U.S. at 843, 104 S.Ct. 2778. To uphold the BIA’s interpretation, we “need not conclude that the agency construction was the only one it permissibly could have adopted ... or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.” Id. at 843 n. 11, 104 S.Ct. 2778. “Instead, we will defer to the agency’s interpretation as long as that interpretation is reasonable.” Xia Fan Huang v. Holder, 591 F.3d 124, 129 (2d Cir.2010) (internal quotation marks omitted). In this case, I see nothing unreasonable in BIA’s decision to derive the definition of “obstruction of justice” from the series of federal offenses collectively entitled “Obstruction of Justice” in the United States Code. As the BIA explained, “Congress did not adopt a generic descriptive phrase such as ‘obstructing justice’ or ‘obstruct justice,’ but chose instead a term of art utilized in the United States Code to designate a specific list of crimes.” Espinoza-Gonzalez, 22 I. & N. Dec. at 893. It was therefore logical for the BIA to look to this list of crimes to discern Congress’s intent.
That being said, however, there is no reason to defer to the BIA’s interpretation of the federal obstruction-of-justice offenses. It is well established that “analysis of a federal criminal statute ... [is] beyond the BIA’s administrative responsibility and expertise.” Mugalli v. Ashcroft, 258 F.3d 52, 56 (2d Cir.2001). Accordingly, I believe we must review de novo the BIA’s conclusion that “[i]n general, the obstruction of justice offenses listed in 18 U.S.C. §§ 1501-1518 have as an element interference with the proceedings of a tri *109 bunal or require an intent to harm or retaliate against others who cooperate in the process of justice or might otherwise so cooperate.” 22 I. & N. Dec. at 892.
On the question of deference, therefore, I would adopt an approach somewhere in between the two adopted by our sister circuits. Unlike the Third Circuit, I believe the statute is silent on the meaning of 8 U.S.C. § 1101(a)(43)(S), and that we must therefore defer to the BIA’s construction of the statute, to the extent that it is within the domain of the agency’s special expertise in immigration law, as long as it is reasonable. Unlike the Fifth and Ninth Circuits, however, I would not simply defer to the BIA’s interpretation of the federal obstruction of justice statutes, over which the BIA has no special expertise, but rather review them de novo.