**IN THE**

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2020

ARGUED: JANUARY 5, 2021
DECIDED: JULY 1, 2021

No. 20-27

ALDWIN JUNIOR BRATHWAITE, AKA ALDWIN BRATHWAITE, AKA JOHN THOMAS, AKA ALDWIN J. BRAITHWAITE, AKA ALDWIN JUNIOR BRATHWAITE BYER,

*Petitioner,*

*v.*

MERRICK B. GARLAND,

UNITED STATES ATTORNEY GENERAL,

*Respondent.*\*

————

Petition for Review of a Decision by the Board of Immigration Appeals
A036-668-868

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Merrick B. Garland is automatically substituted for former Attorney General William P. Barr as Respondent.

————

Before: CALABRESI, RAGGI, AND CHIN, *Circuit Judges*.

————

Petitioner Aldwin Junior Brathwaite petitions for review of an order of removability, entered by the Honorable Joy A. Merriman, U.S. Immigration Judge ("IJ"), on June 11, 2019, and approved by the Board of Immigration Appeals ("BIA") on December 11, 2019. Because the BIA's decision is premised on an unreasonable construction of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), we GRANT the petition for review and REMAND the matter to the BIA for further proceedings consistent with this opinion.

———————————————

JOHN PENG, ESQ. (Nicholas J. Phillips, Esq., Joseph Moravec, Esq., *on the brief*), Prisoners' Legal Services of New York, Buffalo, New York, *for Petitioner*.

KEITH I. MCMANUS, (Jessica E. Burns, *on the brief*), U.S. Department of Justice, Office of Immigration Litigation, *for* Brian Boynton, Assistant Attorney General, Civil Division, Washington, District of Columbia, *for Respondent*.

MARK VORKINK (Paul Skip Laisure, *on the brief*),  New York, New York, *for* Appellate Advocates, The Legal Aid Society of Nassau County, The

Office of The Appellate Defender, and The Chief Defenders Association of New York, *Amici Curiae in support of Petitioner*.

———————————————

CALABRESI, *Circuit Judge*:

Under the Immigration and Nationality Act ("INA"), a noncitizen may be ordered removed on the basis of a qualifying "conviction." *See* 8 U.S.C. § 1227(a)(2). Before 1996, the INA did not define "conviction." But for decades, federal courts and the BIA followed the principle, first set forth by the Supreme Court in *Pino v. Landon*, 349 U.S. 901 (1955), that noncitizens cannot be removed until their convictions have attained a sufficient degree of finality—that is, until direct appellate review of their convictions has been exhausted or waived. When Congress defined "conviction" in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), it generally followed what courts had held "conviction" meant, but it said nothing about the well-established finality requirement. *See* 8 U.S.C. § 1101(a)(48)(A).

In a recent precedential decision, *Matter of J.M. Acosta*, 27 I. & N. Dec. 420 (BIA 2018), the BIA interpreted the IIRIRA's definition of "conviction" and reaffirmed the principle that a conviction cannot trigger deportation until direct

appellate review is exhausted or waived. But the BIA put new limits on this principle. Specifically, in cases where the state's initial period for filing a direct appeal has expired, the BIA devised a burden-shifting framework: once the initial time period for filing an appeal expires, a "presumption" of finality attaches, and the noncitizen bears the burden of proving that (1) the appeal has been filed and is pending, and (2) "the appeal relates to the issue of guilt or innocence or concerns a substantive defect in the criminal proceedings." 27 I. & N. Dec. at 432. Under this presumption of finality, "[a]ppeals, including direct appeals, . . . that do not relate to the underlying merits of the conviction will not be given effect to eliminate the finality of the conviction." *Id.* at 433.[2]

Petitioner Aldwin Junior Brathwaite ("Brathwaite" or "Petitioner") seeks review of a BIA decision ordering his removal on the basis that Brathwaite failed to offer sufficient evidence that the appeal of his criminal conviction—filed after the initial period for filing a direct appeal expired—goes to the merits of his

---

[2] The Government suggested at oral argument that the merits-based showing applies to all appeals, *see* Oral Arg. at 30:00–32:00, both those timely filed and those for which leave is granted to file out of time. In this case we are required to address only the latter appeal and, thus, we express no view as to what, if any, requirements the Government might impose on the former to defer the identification of a "conviction."

conviction. His case raises three issues. First, whether the IIRIRA's definition of "conviction" is ambiguous. Second, if so, whether the BIA's interpretation of the statute is reasonable, that is, (a) whether the finality requirement persists; and (b) if so, whether the BIA may put limits on it. Third, and finally, whether the limits imposed by the BIA in *J.M. Acosta* are reasonable.

We hold that the IIRIRA's definition of "conviction" is ambiguous. We also hold that the BIA reasonably determined that the finality requirement persists. We need not determine whether the BIA may put limits on the finality requirement, however, as even assuming it may, we hold that the limitations the BIA imposed in *J.M. Acosta* are unreasonable. Accordingly, we VACATE the BIA's decision and REMAND this matter to the BIA for further proceedings consistent with this opinion.

## BACKGROUND

Brathwaite is a citizen of Trinidad and Tobago who entered the United States in 1979 as a lawful permanent resident. In January 2018, Brathwaite pleaded guilty to several identity theft and grand larceny charges. He was sentenced to two to four years of imprisonment, with the sentences to run concurrently.

In October 2018, while Brathwaite was incarcerated, the Department of Homeland Security ("DHS") initiated removal proceedings against him. DHS charged that Brathwaite was removable based on his conviction for aggravated felonies as defined by 8 U.S.C. § 1101(a)(43)(G), (M), (U), and for a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii).

Several months later, Brathwaite filed a motion with the First Judicial Department of the New York Appellate Division pursuant to New York Criminal Procedure Law ("NYCPL") § 460.30 for an extension of time to appeal his conviction. The Appellate Division granted his motion, "deeming the moving papers as a timely filed notice of appeal." *People v. Brathwaite*, 2019 N.Y. Slip Op. 71042(U) (1st Dep't May 23, 2019) (unpublished order). Armed with the now timely filed notice of appeal, Brathwaite moved to terminate removal proceedings, asserting that, as his conviction was under appeal, it was not final—and, thus, not a "conviction"—for immigration purposes. DHS argued in opposition that Brathwaite's conviction was final when removal proceedings began, and that Brathwaite had failed to submit adequate evidence establishing that his appeal went to the merits.

The IJ denied Brathwaite's motion to terminate removal proceedings. In doing so, it adopted and incorporated the reasoning of the BIA's precedential decision *Matter of J.M. Acosta*, 27 I. & N. Dec. 420 (BIA 2018). As stated earlier, in *J.M. Acosta*, the BIA (a) concluded that the definition of "conviction" in the IIRIRA is ambiguous, and (b) interpreted the statute to retain the principle that "a conviction does not attain a sufficient degree of finality for immigration purposes until the right to direct appellate review on the merits of the conviction has been exhausted or waived." 27 I. & N. Dec. at 432. The BIA, however, then went further. In cases where "the time for filing an initial direct appeal has expired under the laws of the applicable jurisdiction," it determined that a noncitizen's conviction should be presumed to be final. *Id.* To rebut this presumption of finality, the BIA held that the noncitizen must both "come forward with evidence that an appeal has been filed within the prescribed deadline, including any extensions or permissive filings granted by the appellate court" and "present evidence that the appeal relates to the issue of guilt or innocence or concerns a substantive defect in the criminal proceedings." *Id*.

Applying *J.M. Acosta* to Brathwaite's case, the IJ held that the evidence he submitted to rebut the presumption of finality—the Appellate Division order

granting Brathwaite's motion to late file his appeal—was "legally insufficient." Special App'x at 8.

Brathwaite appealed to the BIA, which issued a single-member unpublished decision dismissing the appeal. The BIA noted that at the time Brathwaite was placed in removal proceedings in October 2018, the thirty-day appeal period provided by NYCPL § 460.10(1)(a) had already passed. As a result, the BIA concluded that the IJ properly relied on *J.M. Acosta* to find that Brathwaite's conviction must be presumed to be final for immigration purposes. Moreover, the BIA held that Brathwaite had not carried his burden of showing non-finality. While the Appellate Division had granted him leave to file a late notice of appeal, the BIA stated that Brathwaite had not submitted evidence that established that he had perfected an appeal "relating to the issue of guilt or innocence, or concerning a substantive defect in the criminal proceedings," and had not otherwise "show[n] what argument he was pursuing" on appeal. Special App'x at 5. This timely petition for review of the BIA's decision followed.

Before this court, Brathwaite argues, *inter alia*, that the statutory text, history, and context of the IIRIRA establish that Congress unambiguously retained the requirement that a conviction challenged on direct appeal is not final for

immigration purposes, and that the *J.M. Acosta* framework therefore imposes impermissible new limitations on finality. In Brathwaite's view, *J.M. Acosta* violates finality because it allows a conviction to become a predicate for removal before appellate review has been exhausted. He also argues that the agency's interpretation in *J.M. Acosta* is impermissible because it undermines the due process rights of noncitizens and interferes with the states' ability to administer their criminal justice systems.

The Government contends that *J.M. Acosta* is a reasonable interpretation of an ambiguous statutory phrase, and hence, that the BIA's interpretation is entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). As the Government sees it, the framework set forth in *J.M. Acosta* appropriately prevents noncitizen defendants from forestalling their removal while they appeal non-substantive defects in their criminal proceedings.

**DISCUSSION**

**A. Standard of Review**

Where, as here, the BIA adopts the IJ's reasoning and offers additional commentary, we review the decision of the IJ as supplemented by the BIA. *See Yan*

*Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the BIA's legal conclusions de novo, but we afford deference to the agency's interpretations of the INA when appropriate under *Chevron. Oppedisano v. Holder*, 769 F.3d 147, 150 (2d Cir. 2014). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Where the BIA's interpretation is "arbitrary, capricious, or manifestly contrary to the statute," it merits no deference. *Singh v. Gonzales*, 468 F.3d 135, 139 (2d Cir. 2006) (quoting *Evangelista v. Ashcroft*, 359 F.3d 145, 150 (2d Cir. 2004) (internal quotation marks omitted)). And where, as here, the court reviews an unpublished BIA decision that relies on a binding published decision, *Chevron* deference extends to any "reasonable resolution of statutory ambiguity" that was established in the earlier decision. *Higgins v. Holder*, 677 F.3d 97, 103 (2d Cir. 2012).

**B. Whether the IIRIRA's definition of "conviction" is ambiguous**

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

"In interpreting the statute at issue, we consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Id*. (quoting *Holloway v. United States*, 526 U.S. 1, 6 (1999)).

The IIRIRA defines the term "conviction," as used in the INA, as:

> a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where . . .
>
> (i)    a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii)    the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

On its face, the provision says nothing about whether a conviction must be "final" in order to predicate removal. Congressional silence typically suggests ambiguity under step one of the *Chevron* analysis. *See Barnhart v. Walton*, 535 U.S. 212, 218 (2002) ("[S]ilence . . . normally creates ambiguity.").

Brathwaite, nevertheless, argues that traditional tools of statutory construction compel the conclusion that the IIRIRA's definition of conviction contains a finality requirement. His argument relies on statutory context as well as legislative history.

He first observes that the IIRIRA's definition of "conviction" was drafted against the backdrop of a longstanding finality requirement. Prior to the IIRIRA, the INA did not provide a statutory definition of "conviction." *See Griffiths v. INS*, 243 F.3d 45, 49 (1st Cir. 2001). But in 1955, the Supreme Court implicitly recognized that a "conviction" for immigration purposes requires finality. *See Pino*, 349 U.S. at 901 (holding record evidence was insufficient to show that "conviction has attained such finality as to support an order of deportation within the contemplation of [former Section] 241 of the Immigration and Nationality Act, 8 U.S.C.A. § 1251 [(1952)]"). Thereafter, the rule universally accepted by the federal courts was that a conviction had to be "final" before it could trigger removal. *See, e.g., Marino v. INS*, 537 F.2d 686, 691–92 (2d Cir. 1976). Moreover, "finality d[id] not occur unless and until direct appellate review of the conviction (as contrasted with collateral attack) ha[d] been exhausted or waived." *Id.; see White v. INS*, 17 F.3d 475, 479 (1st Cir. 1994); *Martinez-Montoya v. INS*, 904 F.2d 1018, 1025 (5th Cir. 1990); *Morales-Alvarado v. INS*, 655 F.2d 172, 174–75 (9th Cir. 1981); *Aguilera-Enriquez v. INS*, 516 F.2d 565, 570 (6th Cir. 1975); *Will v. INS,* 447 F.2d 529, 532–33 (7th Cir. 1971).

After *Pino v. Landon*, the BIA, like the courts, consistently interpreted "conviction" in the removal context to require finality. *See Matter of Thomas*, 21 I. & N. Dec. 20, 21 n.1 (BIA 1995); *Matter of Polanco*, 20 I. & N. Dec. 894, 895–96 (BIA 1994); *Matter of Ozkok*, 19 I. & N. Dec. 546, 552 n.7 (BIA 1988).

In *Ozkok*, a pre-IIRIRA case, the BIA noted that a person was convicted if "the court has adjudicated him guilty or has entered a formal judgment of guilt." 19 I. & N. Dec. at 551. The BIA then wrestled with how to identify a "conviction" in cases of "deferred adjudication," in which defendants pleaded guilty or no contest to criminal charges in exchange for meeting certain requirements laid out by the court, the completion of which would allow defendants to avoid formal conviction. The BIA stated that in these deferred adjudication cases, a "conviction" was evident when all of the following elements were present:

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

*Id*. at 551–52 (footnote omitted).

Significantly, in a footnote to the third element, the BIA made clear that *Ozkok* did not disturb the longstanding finality requirement. It is "well established," the BIA explained, "that a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived." *Id*. at 552 n.7 (citing *Marino*, 537 F.2d at 686).

When in 1996 Congress enacted the current definition of "conviction" as part of the IIRIRA, it derived this definition almost verbatim from *Ozkok*, but it omitted the third prong and with it the footnote referencing finality. *Compare id.* at 551–52 *with* 8 U.S.C. § 1101(a)(48)(A). The IIRIRA House Conference Report explains that legislators removed the third prong concerning deferred adjudications in a deliberate attempt to "broaden[] the scope of the definition of 'conviction'" because *Ozkok* did "not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the

alien's future good behavior." H.R. Conf. Rep. No. 104-828, at 224 (1996). The amended definition thus "clarifie[d] Congressional intent that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." *Id.*; *see also* H.R. Rep. No. 104-879, at 123 (1997) (Letter of Transmittal) (stating that IIRIRA "make[s] it easier to remove criminal aliens, regardless of specific procedures in States for deferred adjudication or suspension of sentences").

Brathwaite argues that by adopting nearly verbatim the *Ozkok* definition of "conviction," Congress imported *Ozkok*'s finality requirement. He asserts that the only change made went to deferred adjudications. And he points out that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006) (internal quotation marks omitted) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998)).

Brathwaite further insists that Congress would be expected to speak clearly and directly if it intended to modify a long-established judicial interpretation of an important legal question. *Cf. Food & Drug Admin. v. Brown & Williamson Tobacco*

15

*Corp.*, 529 U.S. 120, 159 (2000) ("Congress is more likely to have focused upon, and answered, major questions, while leaving interstitial matters to answer themselves in the course of the statute's daily administration." (internal quotation marks omitted)); *see also Saxbe v. Bustos*, 419 U.S. 65, 74–75 (1974) ("[L]ongstanding administrative construction [of an INA provision was] entitled to great weight" and was not "repealed sub silentio" by Congress).

The Government contends, however, that the IIRIRA's definition of "conviction," which includes no discussion of finality, is neither plain nor subject to an ordinary meaning analysis. It argues that the term is therefore ambiguous. And, in support of its arguments, it points to disparate interpretations of that term employed by our sister circuits.

The various courts of appeals, including our own, have indeed differed on the meaning of "conviction" in the IIRIRA. We conclude that the relevant IIRIRA provision, which defines "conviction" as "a formal judgment of guilt of the alien entered by a court," 8 U.S.C. § 1101(a)(48)(A), is sufficiently ambiguous to warrant *Chevron* analysis. On the one hand, the word "entered" might be understood to indicate that a "conviction" occurs when the trial court enters its judgment of conviction in the record, *i.e.*, before the defendant files any notice of appeal. *See,*

*e.g.*, *Planes v. Holder*, 652 F.3d 991, 995 (9th Cir. 2011) (reasoning that, "as a matter of logic, a defendant cannot appeal a conviction until after the entry of a judgment of guilt" and, therefore, that "a 'conviction' . . . exists once the district court enters judgment, notwithstanding the availability of an appeal as of right"). On the other hand, such a conclusion seems, in the immigration context, absurd, if not at least fundamentally unfair, because a direct appeal—at least one on the merits—could result in reversal or vacatur of the judgment of conviction, thus eliminating the basis for removal. *See Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) (observing that courts seek to avoid constructions yielding absurd or fundamentally unfair results). Thus, the text alone does not permit us to conclude confidently that Congress intended a district court's entry of judgment to identify a "conviction" for purposes of immigration law when the validity of that judgment of conviction could be challenged on direct appeal.

Indeed, that uncertainty is reinforced by the recognition that Congress derived § 1101(a)(48)(A)'s definition of "conviction" almost verbatim from *Ozkok*, a decision that clearly preserves the longstanding exhaustion/waiver of direct appeal requirement for the identification of a conviction. *See* 19 I. & N. Dec. at 552 n.7 ("It is well established that a conviction does not attain a sufficient degree of

finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived."). In such circumstances, canons of construction counsel that the statute incorporates existing case law. "When the words of" an adjudicative body "are used in a later statute governing the same subject matter, it is respectful of Congress and of" that body's "own processes to give the words the same meaning in the absence of specific direction to the contrary." *Williams v. Taylor*, 529 U.S. 420, 434 (2000); *see also, e.g.*, *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 71 (2d Cir. 2020) (applying a similar ratification canon).

Further, legislative history reveals that, to the extent Congress departed from *Ozkok*'s definition of conviction, it did so only to close a specific loophole: preventing convicted noncitizens from avoiding removal indefinitely if they had been subject to a deferred adjudication proceeding in certain states whose deferred adjudication procedures required "an *additional* proceeding regarding the alien's guilt or innocence" in the event of a violation. H.R. Conf. Rep. 104-828, at 224 (1996) (emphasis added) (observing that "[i]n such cases, the third prong of the *Ozkok* definition prevents the original finding or confession of guilt to be considered a 'conviction' for deportation purposes" and expressing "Congressional intent that even in cases where adjudication is 'deferred,' the

original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws"). Further, the legislation that became § 1101(a)(48)(A), both as initially proposed and as passed by both chambers, kept *Ozkok*'s definition virtually intact; only in conference did Congress amend the definition by removing *Ozkok*'s third prong. *Compare* H.R. 2202, 104th Cong. § 351 (as introduced Aug. 4, 1995); H.R. 2202, 104th Cong. § 351 (as engrossed in House Mar. 21, 1996) *with* H.R. Conf. Rep. 104-828, at 84 (1996). Looking to the text, structure, and purpose of the statute, therefore, we would find—as the BIA has and as the Government urges—ambiguity as to whether Congress intended the term "conviction" in § 1101(a)(48)(A) to incorporate an exhaustion/waiver requirement.

We recognize that, since 1996, several of our sister circuits to consider the question have held that the IIRIRA unambiguously eliminated the exhaustion/waiver requirement for all forms of convictions. In so finding, these courts have relied primarily on the fact that Congress (1) enacted a definition of "conviction" that did not expressly reference exhaustion, waiver, or finality; and (2) eliminated the third prong of *Ozkok*'s deferred adjudication test. *See, e.g.,* *Siddiqui v. Holder*, 670 F.3d 736, 751 (7th Cir. 2012); *Planes*, 652 F.3d at 996; *Waugh*

19

*v. Holder*, 642 F.3d 1279, 1284 (10th Cir. 2011). For reasons already stated, we do not find these observations conclusive on the question of Congress's intent. In addition, some of these cases apparently relied on dicta from earlier cases involving deferred adjudications, where the exhaustion/waiver requirement was merely an alternative argument and was admittedly not dispositive of the petition for review. *See, e.g.*, *Moosa v. INS*, 171 F.3d 994, 1009 n.8 (5th Cir. 1999).

At the same time, we cannot join those of our sister circuits that have concluded that the IIRIRA unambiguously retains the exhaustion/waiver requirement. *See, e.g.*, *Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 540 (3d Cir. 2014) (emphasizing that *Ozkok* was designed to address, specifically, discrepancies following "the subject alien['s] . . . violat[ion of] a term or condition of probation" in a deferred adjudication procedure); *Griffiths v. INS*, 243 F.3d 45, 54 (1st Cir. 2001) (concluding "statutory language and . . . legislative history reflect a determination that a distinct mode of treatment for deferred adjudications is appropriate").

Our own Circuit has noted in a related context that the "IIRIRA . . . eliminate[d] the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute." *Puello v. Bureau of Citizenship & Immigr. Servs.*, 511 F.3d 324, 332 (2d Cir. 2007). That case concerned whether a

petitioner could use the earlier date of his plea as the date of his "conviction," thereby avoiding application of the IIRIRA to his petition. *See id.* at 331 (concluding that "'conviction' refers to the date on which judgment is entered on the docket, not the date on which a court accepts a guilty plea"). The *Puello* court thus had no occasion to resolve whether Congress had unambiguously abrogated the exhaustion/waiver requirement. Accordingly, this court's statement in *Puello* has generally been treated as nonbinding dicta. *See, e.g.*, *Matter of J.M. Acosta*, 27 I. & N. Dec. at 429 (observing *Puello* "presented [one] conflicting view[] in dicta"); *see also Mohamed v. Sessions*, 727 F. App'x 32, 34 (2d Cir. 2018) (summary order) (same); *Orabi*, 738 F.3d at 542 (same); *Planes*, 686 F.3d at 1039 n. 4 (9th Cir. 2012) (Reinhardt, J., dissenting from denial of reh'g *en banc*) (same). Indeed, other precedential cases in this Circuit have continued to assume that the INA retained the finality requirement. *See, e.g.*, *Adams v. Holder*, 692 F.3d 91, 94 (2d Cir. 2012) ("Upon realizing that the drug conviction was not final for purposes of the INA in light of a pending appeal, DHS amended the Notice to Appear . . . ." (citations omitted)); *Walcott v. Chertoff*, 517 F.3d 149, 154 (2d Cir. 2008) ("Petitioner's March 1996 conviction was not deemed final for immigration purposes until July 1, 1998, when direct appellate review of it was exhausted."). And, in *Abreu v. Holder*, 378 F. App'x

59 (2d Cir. 2010) (unpublished summary order), we remanded the issue of the finality requirement to the BIA as a question of first impression. This array of interpretations suggests that at least the language of the statute—by its silence—is ambiguous. And so, despite the legislative history, which does suggest that Congress departed from *Ozkok*'s definition of conviction only in order to close a specific loophole that permitted noncitizens to avoid removal in the context of deferred adjudications, we find some ambiguity as to just how much Congress intended the term "conviction" to incorporate the longstanding finality requirement.

## C. Whether the BIA's interpretation of "conviction" is reasonable

Having determined the IIRIRA's definition of "conviction" is ambiguous, we turn to the second inquiry—whether the BIA's interpretation is reasonable. We must defer to an agency's "permissible construction of the statute." *Chevron*, 467 U.S. at 843; *see also Oppedisano*, 769 F.3d at 150 ("Even where we would reach an alternate interpretation de novo, we are without authority to impose it if the agency's ruling is permissible." (internal quotation marks omitted) (quoting *Xia Fan Huang v. Holder*, 591 F.3d 124, 129 (2d Cir. 2010))). But no deference, under *Chevron* or otherwise, is due to agency interpretations that are "arbitrary,

capricious, or manifestly contrary to the statute." *Adams*, 692 F.3d at 95 (quoting *Chevron*, 467 U.S at 844). Our analysis focuses on *J.M. Acosta*, the precedential decision on which the IJ and the BIA relied in the case before us.

In *J.M. Acosta*, the BIA reviewed the text of Section 1101(a)(48)(A), the legislative history, and traditional rules of statutory construction and concluded that, "in incorporating the language of the Board's precedent in *Ozkok* to define the term 'conviction,' Congress did not intend to abandon the prior interpretation regarding the finality requirement." 27 I. & N. Dec. at 431. We believe that, in this respect, the BIA's reading of Section 1101(a)(48)(A) is eminently reasonable. As explained, Congress derived the IIRIRA's definition of "conviction" almost verbatim from *Ozkok*. *See* 19 I. & N. Dec. at 552 n.7. This is powerful evidence that Congress intended to preserve the finality requirement. *See Taylor*, 529 U.S. at 434 ("When the words of [an adjudicative body] are used in a later statute governing the same subject matter, it is respectful of Congress and of the [body's] own processes to give the words the same meaning in the absence of specific direction to the contrary."). And the legislative history, which focuses exclusively on the deferred adjudication process in explaining its modification of the *Ozkok* definition, supports that conclusion as well. *See* H.R. Conf. Rep. 104-828, at 224;

H.R. Rep. No. 104-879, at 123. Accordingly, we readily defer to the BIA's interpretation that, as a general matter, a conviction may not trigger deportation until it is final; that is, until appellate review is waived or exhausted.

**D. Whether the limits imposed by the BIA in *J.M. Acosta* are reasonable**

We reach a different conclusion, however, with respect to the BIA's implementation of the finality requirement. As recounted earlier, after concluding that the IIRIRA requires that a conviction be final before removal, the BIA crafted a specific framework governing all instances where a criminal appeal is filed late. *See J.M. Acosta*, 27 I. & N. Dec. at 432.

In these cases, once the initial time to appeal has passed, a presumption of finality attaches. *Id.* To rebut that presumption, the noncitizen defendant must *both* "come forward with evidence that an appeal has been filed within the prescribed deadline, including any extensions or permissive filings granted by the appellate court," *and* "present evidence that the appeal relates to the issue of guilt or innocence or concerns a substantive defect in the criminal proceedings." *Id*. The BIA justified this gloss on the IIRIRA by arguing that some appeals—those "relat[ing] only to the [noncitizen's] sentence or that seek to reduce the charges, to ameliorate the conviction for rehabilitative purposes, or to alleviate immigration

24

hardships"—should not affect the finality of the conviction for removal purposes. *Id.* at 433.

It may be permissible for the BIA to establish some limits on the finality requirement. After all, appeals challenging the length of a sentence or seeking other relief that would alter but not overturn a defendant's conviction—even if successful—might reasonably be understood in the immigration context not to render a conviction non-final. In that context, the principal reason not to construe "conviction" to mean the district court's entry of a judgment of conviction but, rather, to require finality, is the possibility that the judgment will be reversed or vacated and, thus, no longer support removal. Accordingly, it may be reasonable to conclude that in the immigration context a conviction is not final upon entry of judgment only if an appeal could yield that relief. *See, e.g., Matter of Marquez Conde*, 27 I. & N. Dec. 251, 255 (BIA 2018) (interpreting the IIRIRA's "definition of a 'conviction' to include convictions that have been vacated as a form of post-

conviction relief" but not those "that have been vacated based on procedural and substantive defects in the underlying criminal proceeding").[3]

We need not here decide whether some limits on the finality requirement may appropriately be read into the IIRIRA, because we conclude that the specific burden-shifting regime and evidentiary standard demanded by the BIA to show a merits-based appeal is not reasonable. Specifically, the BIA requires a non-citizen to make a merits-based showing at the notice stage, often before he is able to review the record or identify his arguments on appeal. The BIA points to nothing in the statutory text or legislative history indicating that this requirement reflects Congressional intent. Moreover, the requirement ignores the realities of appellate practice.

In New York, for example, a defendant may file a written notice of appeal with the clerk of the criminal court within 30 days of the judgment from which an appeal is sought. *See* NYCPL § 450.10. Or, should that initial time period expire, a

---

[3] At oral argument, Brathwaite's counsel conceded that it would not be unreasonable for the BIA to require a petitioner to show that an appeal was merits-based to defer identifying a "conviction," so long as the noncitizen is afforded the opportunity to secure counsel, review the trial record, and identify his appellate arguments before making that showing.

defendant may seek the permission of an intermediate appellate court to file a late notice of appeal. *See* NYCPL § 460.30(1). A motion for a late notice of appeal may be filed within one year and thirty days of the criminal judgment. *See id*.

Such late filings are a matter of course in New York. Perhaps for this reason, New York courts treat appeals taken by written notice of appeal and those taken by a granted § 460.30 motion as identical. *See People v. Corso*, 40 N.Y.2d 578, 580–81 (N.Y. 1976); *see also Abreu*, 378 F. App'x at 61 ("[A]n appeal . . . pursuant to . . . § 460.30 is equivalent to any other direct appeal . . . .").

Once the deadline for appeal as of right has passed, however, the BIA requires a respondent to offer evidence both that a timely (or timely reinstated) appeal is pending and that the appeal "relates to the issue of guilt or innocence or concerns a substantive defect." *Matter of J.M. Acosta*, 27 I. & N. Dec. at 432.

Meeting this requirement at the notice of appeal stage creates significant practical problems. Most notably, the criminal appeals process in New York proceeds at a different pace than federal removal proceedings. It can take considerable time for appellate counsel to be appointed for an indigent defendant. And even when appellate counsel is appointed, counsel's ability to identify substantive defects turns on another frequently delayed process: the production

of the criminal court record, which can "take anywhere from two months to two years." *See* N.Y.C. Bar Comm. on Crim. Just. Operations, Comm. on Crim. Advoc., and Comm. on Crim. Cts., *Delays Associated with Compiling the Record on Appeal in Criminal Cases: Letter* 1 (2020), https://perma.cc/6XDD-7D5S (detailing the various obstacles to the timely receipt of the criminal court record by appellate counsel). And this says nothing of the time required for counsel to review and analyze the trial record once it is obtained.

As a result, meeting the BIA's requirement to show at the notice of appeal stage that a pending appeal relates to the issue of guilt or concerns a substantive defect is frequently impossible. *See Garza v. Idaho*, 139 S. Ct. 738, 745 (2019) (observing that, at notice of appeal stage, defendant may lack "important documents from the trial court," and claims are "likely to be ill-defined or unknown"). And this means that noncitizen criminal defendants pursuing late-filed appeals risk deportation even while pursuing state-approved challenges to criminal convictions.

The problem is compounded further by the BIA's apparent evidentiary requirements for showing that a late-filed criminal appeal goes to the merits of the conviction. In at least one recent, non-precedential decision, the BIA held that a

letter from appellate counsel describing the anticipated merits-based grounds for appeal did not satisfy the *J.M. Acosta* standard. *See In re Mohamed Jumale*, File No. AXXX-XX4-237, 2019 WL 7859276, at *2-3 (BIA Dec. 9, 2019); *see also In Re: Rubben Gregorio Mejia Peralta*, File. No. AXXX-XX5-437, 2019 WL 7168746, at *2 (BIA Sept. 27, 2019) (noting DHS's argument that "an Immigration Judge cannot definitively discern the basis of a criminal appeal until the perfected appellate filing is reviewed"). It appears, then, that the BIA expects noncitizen defendants who have late-filed appeals challenging convictions supporting their removal to submit their appellate brief filed in state court to show that their challenge is merits-based and, thus, to rebut the presumption that their convictions are final. Doing so is manifestly impossible for most criminal defendants in New York (and, likely, many other states). Thus, even under the BIA's own interpretation of the statute, requiring some showing that a late-filed appeal is merits-based, the agency's demand for that showing to be made at the notice stage and, presumably, with a copy of the filed appellate brief, is unreasonable.

Brathwaite's own case illustrates the problems with the BIA's finality requirements. Brathwaite was convicted on January 31, 2018, and timely moved for permission to file a late appeal on February 15, 2019. The Appellate Division,

First Department, granted his § 460.30 motion on May 23, 2019. But the New York court did not grant Brathwaite poor person relief, assign appellate counsel, and order production of the criminal record until April 2, 2020, nearly a year after his motion to late-file the appeal and over two years after his conviction. *People v. Brathwaite*, 2020 N.Y. Slip Op. 65271 (1st Dep't Apr. 2, 2020) (unpublished order). By that time, the IJ had already ordered Brathwaite removed, the BIA had affirmed the IJ's removal order, and the appeal process before this court was well under way. The IJ, in other words, had required Brathwaite to submit evidence—presumably in the form of a perfected appellate brief—before he had been appointed appellate counsel or even received the record in his case.

* * * *

Given that the BIA itself concluded that Congress intended to preserve the finality requirement for criminal convictions, *J.M. Acosta*, 27 I. & N. Dec. at 431, we think "it is quite impossible that Congress could have intended" this result, *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 517 (2d Cir. 2017) (quoting *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 470-71 (1989) (Kennedy, J., concurring in the judgment)). We therefore conclude that the BIA's interpretation of the IIRIRA to require a noncitizen pursuing a late-filed appeal to

show the BIA that the appeal is merits-based at the time the appeal is noticed and by the production of a filed appellate brief is arbitrary and unreasonable.

## CONCLUSION

The BIA's burden-shifting scheme and its accompanying evidentiary requirement amounts to an unreasonable and arbitrary interpretation of the IIRIRA. We therefore GRANT Brathwaite's petition and REMAND the matter to the BIA for further proceedings consistent with this opinion.